## Commonwealth v. Kaplan.

*Divorce—Decrees of sister states—Service on respondent—Nevada divorce.*

1. A decree of divorce granted in another state will not be regarded as a bar to a support order previously made in Pennsylvania, if at the time of the making of the foreign decree the court had no jurisdiction over the person of the respondent.

2. In the absence of a voluntary submission to the foreign court, such court has no jurisdiction over a respondent who was never actually present in the foreign state; a personal service outside the foreign state or by publication is insufficient.

3. Except where there is a statutory provision or an express decision of the court in another state making a special appearance to question the jurisdiction of the court operate as a general appearance, such special appearance will not be regarded as a general appearance giving the foreign court jurisdiction to enter a judgment enforceable in Pennsylvania.

4. Where a decree obtained in another state is offered in evidence and the decree by its terms indicates that the court had no jurisdiction over\ the person of the respondent, the burden of showing the absence of jurisdiction, either by the entire record or *aliunde*, is not upon the party against whom the decree is offered.

Petition to revoke suspension of order for support and to restore order. M. C. Phila. Co. (Domestic Relations Division), No. 55963.

*Clinton O. Sowers*, for plaintiff; *Emanuel Romm*, for defendant.

BONNIWELL, J., Oct. 14, 1927.—This is an application by Elizabeth Kaplan to restore an order of Dec. 16, 1924, for support made by this court against Jack Kaplan, her husband, for the payment of $9 per week. On Nov. 23, 1926, this order was suspended after a hearing on an attachment to compel the defendant to pay arrears. At this hearing the defendant offered in evidence a certified copy of a decree of the Second Judicial District of the State of Nevada, dated Nov. 16, 1925, by which said Jack Kaplan was granted an absolute divorce from the said Elizabeth Kaplan. At the hearing in the Municipal Court it was agreed by counsel for the respective parties that with the copy of this decree there should go in evidence a copy of the appearance entered by Mrs. Kaplan's attorney in the Nevada court. The order entered by the Municipal Court was "an order of Dec. 16, 1924, suspended as of Nov. 16, 1925, without prejudice to the status of the divorce decree."

On Feb. 7, 1927, there was a petition to restore the order of Dec. 16, 1924. On March 9, 1927, this petition was dismissed on the ground that the proceedings were merely to collect a debt due by an ex-husband to the petitioner.

On April 4, 1927, Mrs. Kaplan again applied for the revocation of the order of Nov. 23, 1926, and for a restoration of the order of Dec. 16, 1924.

At the hearing of this petition on May 12, 1927, the defendant again relied upon the Nevada decree to relieve him of all obligations to support the petitioner since the date thereof. The petitioner again contended that the decree was invalid in Pennsylvania because the Nevada court had no jurisdiction over the person of Mrs. Kaplan, the defendant in the Nevada pro-

ceedings. No evidence was offered by the parties at this hearing; counsel for both parties treated the matter as a rehearing on the testimony already offered, and ignored the order of March 9, 1927, which dismissed the petition.

As the validity of the Nevada decree must be determined before the rights of the petitioner and her husband in this State can be determined, and as this question has never been formally decided, this court will now take up this question without considering any informalities in the manner in which this question is brought before the court.

The Nevada decree in question is in the following terms:

"This cause having heretofore, on the 16th day of November, 1925, come on regularly to be heard before the above entitled court, the undersigned Judge of the Second Judicial District Court presiding, the plaintiff appearing in person and by his counsel, Harlan L. Howard, the defendant having been personally served with summons, according to law, on the 3rd day of October, 1923, and having, by her counsel, Messrs. Pointer & Withars, filed her motion to dismiss the case for want of jurisdiction, and said motion having been by the court overruled and denied, and the defendant not having asked for any further time or relief, and not otherwise appearing, and her default having been duly entered according to law, and the court having heretofore signed its findings of fact and conclusions of law, determining that the above named plaintiff is entitled to a decree of divorce from the defendant on the ground of extreme cruelty."

The petitioner's rule or motion to dismiss, or rather the notice of the same as it appears in the notes of testimony in the Municipal Court, is in these terms:

"To Jacob Kaplan and his attorney of record, Harland Howard:

"You and each of you will please take notice: That on Monday, the 23rd day of November, A. D. 1925, before George A. Bartlett, one of the Judges of the above entitled Court, at the Court House, Reno, Nevada, defendant will and hereby does, for the sole, only and exclusive purpose and condition move said Court for an order to dismiss the above entitled case for want of jurisdiction on the grounds that defendant is not now and never has been a citizen of the State of Nevada or a resident therein, and has not been within the confines of said State at the time of the commencement of the proceedings herein, or prior thereto, or since said date."

Taking the facts set forth in the decree and notice, together with the records in our own court, we have the case where a man subject to a support order from this court goes to Nevada, where the wife has not been during the marriage, and after service either by publication or notice outside the State of Nevada, and, without the wife's submission to the jurisdiction of the court, obtains a decree of divorce.

The terms of the decree exclude the notion that the Nevada court assumed jurisdiction after a hearing on any issue of fact raised by the plea to the jurisdiction. The motion or plea to the jurisdiction denies every ground on which a court in divorce may assume jurisdiction over a non-resident defendant and give a decree binding in other states. By the terms of the motion to dismiss, Nevada was not the domicile of the marriage, the state where the matrimonial offence could have been committed, nor was the petitioner personally served while in that state.

The facts thus to be inferred from the record resemble very closely the facts in Duncan *v.* Duncan, 265 Pa. 464, where the Supreme Court said: "There was, however, no competent evidence to prove a divorce. There was evidence

he alleged he went to Reno, Nevada, established a residence there, for some unstated reason began proceedings in divorce there, attempted to serve her with process in Johnstown in this State by causing to be read to her some papers, the contents of which are not shown, obtained a divorce in Reno, and later sent her a copy of the decree. It is neither averred nor proved they ever lived together in Nevada, or that she ever recognized the alleged decree. Under such circumstances, even if granted, it would be of no validity in this State: Colvin v. Reed, 55 Pa. 375; Reel v. Elder, 62 Pa. 308; Haddock v. Haddock, 201 U. S. 562."

The Haddock case, *supra*, decides that, in the facts above stated, the courts of another state, under the full faith and credit clause of the Federal Constitution, are not bound to recognize a decree in divorce so obtained. The Duncan case, *supra*, decides that a decree in divorce so obtained in another state will not be recognized in Pennsylvania.

The rule of law settled by these cases is not questioned by counsel for the defendant. It is, however, contended for the defendant that the recitals in the decree leave a doubt as to whether the petitioner ever entered a general appearance, in addition to the special appearance, and also as to whether petitioner ever participated in the Nevada case upon the merits. It is further contended that the petitioner should have denied specifically that she ever had subjected herself to the jurisdiction of the court in the manner referred to, and if this appears from the parts of the record not offered by the defendant, the petitioner should have produced the entire record.

To sustain these contentions would be to shift the burden of having a judicial record complete from the party who offers it to the party against whom it is offered. It is not necessary to decide in this case whether the petitioner could have opposed the admission of the Nevada decree on the ground that as a judicial record it ought to be offered in its entirety. See 4 Wigmore on Evidence, § 2110. By withdrawing her objection to the admission of the decree, the petitioner waived her right to object to the completeness of the record, and the court is entitled to make any necessary or logical deductions from its terms; and as there was no testimony outside this record, the court is not only entitled to make any logical deductions from its terms, but is restricted to such terms. Even the most positive recitals of jurisdictional facts in the record could have been contradicted: Old Wayne Mutual Life Ass'n of Indianapolis v. McDonough, 204 U. S. 8. To require proof outside the record that jurisdictional facts did not exist, the assertion of jurisdiction in the decree must be construed with the other recitals in the decree. In this case, the recital of the personal service of summons on the defendant "according to law" is inconsistent with the dismissal of the motion to dismiss for want of jurisdiction also recited by the decree.

The only remaining question is whether the petitioner waived her immunity to suit in Nevada by having her counsel enter a special appearance for her in the Nevada court for the sole purpose of questioning the jurisdiction of the court.

In 4 Corpus Juris, 1368, it is said: "It is a well-settled rule, except in those jurisdictions hereinafter specially mentioned, that a special appearance does not give the court jurisdiction of the person."

In a note to the above quotation are cited cases from most of the states, including McCullough v. Railway Mail Ass'n, 225 Pa. 118, where the practice on this subject in Pennsylvania is set forth. The states where the contrary rule prevails are Texas and Iowa, where the matter is governed by statute: 4 Corpus Juris, 1369.

Commonwealth v. Kaplan.

An examination of the reported decisions of the courts in Nevada and the statutes of that state show that special appearances may be made in that state. In Curtis v. McCullough, 3 Nev. 202, 211, it is said: "Or he could have appeared specially for the purpose of setting aside the defective writ, without acknowledging the jurisdiction of the court; for, by appearing to object to the jurisdiction over him, it could not be said that he thereby acknowledged such jurisdiction."

The Nevada decree does not show the ground on which the court bases its retention of jurisdiction. It may have been the personal service of summons which the decree recites was "according to law." We are not required by the terms of the decree to suppose that the court intended to rule, without statute, that a special appearance to object to the jurisdiction amounted to a general appearance.

It is not necessary to consider how far courts of this State would be compelled (by the full faith and credit clause of the Federal Constitution) or would voluntarily recognize such a foreign decree, where, by statute or decision in the foreign state, a special appearance to object to the jurisdiction was made a general appearance.

In York v. Texas, 137 U. S. 15, it was held by the Supreme Court of the United States that a statute of the State of Texas which made a special appearance for the purpose of objecting to the jurisdiction a general appearance, under which a court could take jurisdiction of a non-resident and pronounce judgment, did not violate the due process clause of the Federal Constitution. The court said: "It is only when process is issued thereon or the judgment is sought to be enforced that the liberty or property is in present danger."

This decision leaves undetermined the question how far a judgment so obtained would be enforceable in another state under the full faith and credit clause of the Federal Constitution.

In conclusion, we hold:

1. That a decree of divorce granted in another state will not be regarded as a bar to a support order previously made in Pennsylvania, if at the time of the making of the foreign decree, the court had no jurisdiction over the person of the respondent.

2. In the absence of a voluntary submission to the foreign court, such court has no jurisdiction over a respondent who was never actually present in the foreign state; a personal service outside the foreign state or by publication is insufficient.

3. Except where there is a statutory provision or an express decision of the court in another state making a special appearance to question the jurisdiction of the court operate as a general appearance, such special appearance will not be regarded as a general appearance giving the foreign court jurisdiction to enter a judgment enforceable in Pennsylvania.

4. Where a decree obtained in another state is offered in evidence and the decree by its terms indicates that the court had no jurisdiction over the person of the respondent, the burden of showing the absence of jurisdiction, either by the entire record or aliunde, is not upon the party against whom the decree is offered.

The order of the court, therefore, is that the former order of Dec. 16, 1924, be restored from the date hereof, and that said Jack Kaplan, defendant, pay to his wife Elizabeth the sum of $9 per week, together with any arrears due thereunder on Nov. 16, 1925, and unpaid at the present time.