## Colvin *versus* Reed.

1. Taylor, residing in Pennsylvania, conveyed to Colvin, his wife not joining in the deed; Colvin gave a bond for part of the purchase-money payable when the wife's interest in the land should be discharged. Taylor became a citizen of Iowa, his wife still residing in Pennsylvania, procured a divorce in Iowa and died, his wife surviving him, she not having released her interest. *Held*, that there could be no recovery on the bond.

2. In the question of jurisdiction there is no difference between the interstate and a foreign relation.

3. The unity of person created by marriage is a legal fiction, to be followed for all useful and just purposes, but not to destroy the rights of either contrary to the principles of natural justice in proceedings which, from their nature, make them opposite parties.

4. Mutual consent was required to establish the relation, and the husband and wife should be viewed in their separate natural condition, where one proceeds against the other to destroy the relation.

5. As to a dissolution of marriage each has a right to be heard as a natural person.

6. The law of the place of the actual bonâ fide domicil of the parties, gives jurisdiction to the proper courts to decree a divorce for any cause allowed by the local laws without reference to the law of the place of the original marriage.

7. The law of domicil implies that it is the actual domicil of both parties or was when the offending party left it.

8. Where the injured party seeks a new domicil and the domicils are, therefore, actually different, there is no greater reason why the husband's new domicil should prevail over the wife's than hers over his. Neither should draw the other within a foreign jurisdiction.

9. Nothing but the possession of the person of the wife before or at the

[Colvin *v.* Reed.]

time of the proceeding can warrant another state to subject her to its jurisdiction.

10. By marriage the wife residing in Pennsylvania has claims upon her husband's property here, and our laws have claims to apply it to her support as one of its married citizens.

11. The husband had his remedy in Pennsylvania. In seeking a new domicil he abandoned this right, and he cannot complain that he is deprived ·of the full effect of the decree of another state because he could not procure service upon his wife there.

May 20th 1867. Before WOODWARD, C. J., THOMPSON and AGNEW, JJ. STRONG and READ, JJ., absent.

Error to the Court of Common Pleas of *Bedford county*.

This was an amicable action of debt, instituted November 19th 1866, between John P. Reed, administrator of James Taylor, deceased, plaintiff, and William Colvin, defendant.

The facts agreed upon in a case stated were as follows :—

James Taylor, the decedent, was married to Susanna C. Taylor on the 12th of May 1857. He then resided in Bedford county, and his wife in Allegheny city, Pennsylvania. Shortly afterwards they went to Iowa and returned in the following July. Mrs. Taylor went to the house of her brother-in-law in Allegheny city. It appeared, from depositions made part of the case, that he afterwards requested her to go to live with him in Bedford county; that she declined, saying that she could not live with him, and that whatever expense she had been to him since marriage she would refund to him. He made out his bill amounting to $40, which she paid and took his receipt. He afterwards, about October, went to Bedford county, and resided there until the following spring. About May 1st 1858 Taylor sold a farm in Bedford county to Colvin, and executed to him a deed for it, his wife not joining in it. At that date Colvin gave a single bill with warrant of attorney to Taylor for $1000, part of the purchase-money, payable on the 1st of January 1859, with condition " that if the above James Taylor and his heirs, executors or administrators, or any of them, will procure the right from the wife of James Taylor she holds in the lands I purchased from James Taylor, on or before the 1st of January next, then the above sum to be due the said James Taylor, and if the title is not made to the said Colvin on the 1st of January, there is not to be any interest on the above sum, nor to be due until there is a proper discharge from the interest of the wife of James Taylor, or any proper course that can have his wife's interest *procured* by law."

He afterwards removed to Iowa, and became a citizen of that state.

On the 1st of January 1859 no discharge of the wife's interest in the land had been obtained.

On the 23d of February 1860 Taylor petitioned the District Court of Black Hawk county, Iowa, setting forth his marriage,

[Colvin v. Reed.]

and the wilful and malicious desertion of his wife in Pennsylvania, continued for more than two years, and prayed for a divorce from her.

Notice of the application was directed to be given by publication in a public newspaper, and depositions were taken as to the marriage and desertion. The wife had no actual notice of the proceedings.

The court afterwards made the following decree:—

" JAMES TAYLOR
        v.        } Divorce.
" SUSANNA C. TAYLOR.

" At this time, to wit, on the 24th day of April, A. D. 1860, it appearing that the defendant has had due notice of the pendency of this action by publication, as required by law, and being called came not, but wholly made default. Wherefore the court considering the said complainant's bill of complaint and the exhibits herein, and being fully advised, considered that the said complainant ought to have the relief prayed for in his said bill, and ordered and decreed that he be discharged and for ever divorced from the bonds of matrimony heretofore existing between himself and the said Susanna C. Taylor, &c."

Taylor has since died in Iowa, the place of his residence. His wife is still living. Notice of the decree of divorce had not been given to Colvin till the institution of the suit. He resides in Bedford county.

The administrator brought this suit to recover the sum of $1000, the balance of the purchase-money as above stated.

It was further contained in the case as follows:—

" Should the court be of opinion, under this state of facts, that the divorce procured as aforesaid, on the 24th day of April 1860, worked a discharge of the said Susanna C. Taylor's right to dower in said land, then judgment to be rendered for the said plaintiff against the defendant for $1000. And should the court be of opinion that interest is due and payable on said sum from the time such divorce was decreed, then such interest to be added."

The court entered judgment for the plaintiff for $1000.

The defendant took a writ of error.

*J. Cessna*, for plaintiff in error, cited Steel *v.* Smith, 7 W. & S. 451; Rogers *v.* Burns, 3 Casey 525; D'Arcy *v.* Ketchum, 11 How. 165; 2 Bishop M. & D. 141; Jackson *v.* Jackson, 1 Johns. 424; Pawling *v.* Bird's Ex'rs., 13 Id. 192; Bender *v.* Fitch, 15 Id. 151; Barber *v.* Root, 10 Mass. 262.

*J. P. Reed*, defendant in error, *p. p.*, cited 2 Black. 128; 2 T. & H. Pr. 216; Flory *v.* Becker, 1 Barr 470; Miltimore *v.* Miltimore, 4 Watts 150; Act of Congress of May 26th 1790, 1 Bright-

[Colvin *v.* Reed.]

ly's Dig. 265, pl. 9; Baker *v.* Field, 2 Yeates 532; 1 Peters's
C. C. 74, 155; Fritz *v.* Fisher, 3 Am. Law Reg. 243; 2 Bishop
M. & D. 141; Hood *v.* Hood, 11 Allen, 196.

The opinion of the court was delivered, November 14th 1867, by
AGNEW, J.—The question in the court below was, whether the
dower of Susanna Taylor, wife of James Taylor, in his property
in this state, was extinguished by a divorce obtained by him in
the District Court of Black Hawk county, in the state of Iowa.
The case stated is badly made up, but from the record and testi-
mony of the divorce, we ascertain the following facts: James and
Susanna Taylor, at the time of their marriage, in May 1857, were
citizens of Pennsylvania.  Shortly after their marriage they
made a visit to Iowa and returned, Mrs. Taylor not being pleased
with the country.  After their return, she declared to him her
intention not to live with him, and refunded to him $40, his bill
for the expenses of her journey to Iowa.  She remained at her
brother's, in Allegheny City, and he went back to Bedford county,
in October, and remained there till May 1858, when he sold his
farm to the defendant, and removed to Iowa, leaving his wife in
Pennsylvania.

In 1860 Taylor, then being a bonâ fide citizen of Iowa, com-
menced proceedings for a divorce *a vinculo*, and, after due pub-
lication of notice, according to the laws of Iowa, a divorce was
decreed, on the ground of the desertion alleged to have taken
place in Pennsylvania.  Susanna Taylor had no actual notice,
and at the time was a resident citizen of this state, never having
left it.

The question on this state of facts is, whether the Iowa court
had jurisdiction to declare the divorce of Mrs. Taylor so as to
discharge the lands of her husband in Pennsylvania from her
right of dower?

Neither the person nor the property of Mrs. Taylor being
within the power of the Iowa court, no extra-territorial effect
can be imputed to its judgment, unless a proceeding in divorce
be an exception to the general rule.  The governing principle is
well stated by Mr. Story in his Conflict of Laws, § 20, chap. 2;
and in Steel *v.* Smith, 7 W. & S. 447, C. J. Gibson shows that
this principle is not affected by the provision in the Constitution
of the United States for giving full faith and credit to the judi-
cial records of the several states.  The same principle is recog-
nised by C. J. Lewis, in Rogers *v.* Burns, 3 Casey 527.  In a
question of jurisdiction, therefore, there is no difference between
the interstate and a foreign relation; and the only question is
how far the subject of divorce forms an exception to the general
principles requiring personal notice of the proceeding.  The
marriage relation being one of civil *status*, as well as of con-

tract, different views have been entertained. The right of every nation or state to regulate the civil relations of its citizens, being one pertaining to the good order and proper economy of the body politic, cannot be doubted. Yet, how far in regulating the *status* of one within its borders, it may thereby affect the interest of another not answerable to its jurisdiction, is not so easily perceived. In the absence of a common domicil of the husband and wife, the doctrine of their marital unity is pressed in order to strengthen the jurisdiction which a husband attempts to import into the *forum* of the new domicil he has sought.

If by legal unity the wife may be considered a citizen of Iowa, contrary to the truth, and thereby subjected to the jurisdiction of its tribunals, the case must be ended, for the provision in the Federal Constitution giving effect to the record compels us to recognise it as equal in validity with our own. But the unity of person created by the marriage is a legal fiction, to be followed for all useful and just purposes, and not to be used to destroy the rights of either, contrary to the principles of natural justice, in proceedings which, from their nature, make them opposite parties.

It required their mutual consent to establish the relation from which the unity arises; and the same law of right demands them to be viewed in their separate natural condition when either proceeds against the other to destroy this relation. It is the necessary effect of their being opposite parties in the same proceeding. Upon a dissolution of the marriage, therefore, each has a right to be heard as a natural person. This sends us back to the inquiry how far a state having a right to regulate the civil *status* of one of the parties, may, in doing so, alter the *status* of another, over whom it never has had any power?

Supposing that the state of Iowa, on an *ex parte* proceeding, or a proceeding when notice is given only by publication, can make the divorce effectual to protect the husband within its jurisdiction from all civil and criminal proceedings founded on the marriage, and can regulate the descent and succession of his property in that state, discharged from the claims of the wife; yet can this effect be made extra-territorial upon any correct principles of universal application?

An argument is quoted to us that the "state being interested in every marriage contract, which imposes upon its citizens a *status* in life, assumes to change and modify that *status* whenever the public good demands it. And this right, unless unjustly exercised, will be conceded by all foreign governments."

Doubtless this is correct when confined to those who are her citizens; or when applied to the question so greatly contested between the English and Scottish courts, whether the *lex loci*

*contractus* or the law of the *domicil* should regulate the power of divorce.

Mr. Bishop, in his work on Marriage and Divorce, § 141, quoting the language of Judge Story, in his Conflict of Laws, § 230 *a*, says: "The doctrine now firmly established in America upon the subject of divorce is, that the law of the place of the actual bonâ fide domicil of the parties gives jurisdiction to the proper courts to decree a divorce for any cause allowed by the local law; without reference to the law of the place of the original marriage, or to the place where the offence, for which the divorce is allowed, was committed." Excepting the last statement, in reference to the *locus delicti*, this is the law of Pennsylvania. But the law of domicil implies that it is the actual domicil of both of the parties, or was, when the offending party left it. In a proceeding to dissolve a marriage the parties stand upon a level of rights. When the injured party seeks a new domicil, and the domicils are, therefore, actually different, there is no greater reason why the husband's new domicil should prevail over the wife's, than that hers should prevail over his. In this aspect justice requires that neither should draw the other within the folds of a foreign jurisdiction.

If a wife enjoying here the comforts of home, friends and refinement, should refuse to follow the whim or caprice of her husband into western wilds, or to encounter the perils and hardships of a journey to the mines of California, on what principle of that natural justice which regulates interstate law, shall the husband's new abode draw his wife's domicil thither? Clearly no state right to regulate the *status* of its own citizens can justify this. The publication of the notice makes no difference, for back of it lies the want of power of the distant state to subject her to its jurisdiction. Nothing short of possession of the person before or at the time of the proceeding can warrant this. Even in questions of property, the *situs* must be within the state to subject it to jurisdiction, and beyond the particular property so situated, no right can be affected by a foreign jurisdiction: Steel *v.* Smith, *supra.*

But to attend more closely to the power of the distant state in this case, we find that the rights of Iowa and Pennsylvania stand in equipoise, or rather that the former is outweighed by the latter, jurisdiction having first vested in Pennsylvania, the place of the common domicil, of the offence and of the marriage.

Undoubtedly, Pennsylvania has an equal if not a greater right to regulate the *status* of the wife, who never ceased to be her citizen.

By marriage, the wife has claims upon her husband's property here, and the law of Pennsylvania has claims to apply it to her support, as one of its married citizens. On what principle of

right or of comity shall the decree of a distant tribunal, never having acquired jurisdiction from domicil, or otherwise, over her, cut loose these claims, and disable Pennsylvania from taking the property of the husband within her borders, to lift the burden of support from the public shoulders; or from rendering to the wife judicially that right which she has in her husband's property, and which he neither carried away with him nor defeated by his removal? To admit the greater right of the foreign decree is to derogate from our own sovereignty, and to withdraw from one of our own citizens the protection due to her. No correct principle of interstate law can demand this.

Nor does the qualification help the opposite argument, that the right to make the decree must have been *justly* exercised.

The jurisdiction once conceded, the proper exercise of the power cannot be inquired into; for then the record itself, under the Federal Constitution, becomes the only evidence of the rightful exercise of the power.

If the right to be divorced is to be retried upon grounds of mere propriety, the adjudication contained in the record amounts to nothing.

The argument *ab inconvenienti*, so much resorted to, has no weight in this case. Here the husband had his remedy in Pennsylvania, the place of the common domicil, as well as of the offence. Her courts were open to him, and had jurisdiction over the person of his wife.

He could file his petition, even before the period required to complete the desertion, and obtain the decree at the moment of its termination. In seeking a new domicil he abandoned these rights; and there is no justice in his complaint that he is deprived of the full effect of the Iowa decree, because he could not procure service there upon his wife. The cases which have furnished the grounds of seemingly opposite conclusions, and the arguments of writers upon this vexed question, have generally been those in which the *offending* party left the common domicil and put it out of the power of the injured party to proceed, except at the place of the common domicil, on the principle that jurisdiction once vested is not lost by his departure. Thus, the argument of inconvenience is of no weight. It is probably this amenability to the original jurisdiction that has led to confounding with it those cases where the injured party leaves the common domicil, and attempts to draw the jurisdiction after him into the court of a new domicil. But the case before us shows that there is a just limit to the alleged inconvenience, as well as to the state power.

This is the doctrine of the Pennsylvania authorities. Dorsey v. Dorsey, 7 Watts 350, is the leading case, and is quoted at length, and with approbation, by Judge Story, in his Conflict of

Laws, § 230 a, 205, note 1.   That case was the converse of this, as to the State, but the same in principle.   The parties had been citizens of Pennsylvania, and married here, but had both removed to Ohio, where they were domiciled at the time of the alleged desertion of the husband.   The wife returned to Pennsylvania, where, after a résidence of several years, she presented her petition for a divorce *a vinculo*, which was dismissed for want of jurisdiction.

In his opinion, Chief Justice Gibson reviewed the doctrine of the English and Scottish courts, adhering to neither, but coming to the conclusion that jurisdiction depends on the real domicil of the parties at the time and place of the injury.   In the course of his opinion, he stated, that the ground of the want of jurisdiction of the wife's libel, was the conclusive fact that the person of the transgressor was not subject to our jurisdiction, and that an attempt to bind him without it, or without hearing or notice, would be extravagant.

On one point the opinion of this eminent jurist has been much doubted, to wit the *locus delicti*, which he asserts is also essential to the jurisdiction.   It is denied by Mr. Bishop (M. & D., §§ 172 to 177, inclusive), and the legislature has since furnished a different rule in cases of desertion and adultery: Act 26th April, 1850.

In McDermott's Appeal, 8 W. & S. 256, the Chief Justice maintained the same opinion as to the *locus delicti*, setting out with the declaration that there is no question, that the courts here have no jurisdiction of marital duties abroad ; and were we required to decree alimony for desertion, before the parties were domiciled in the state, we would be bound to refuse it.

The doctrine of Dorsey *v.* Dorsey as to the *locus delicti*, was recognised by Justice Coulter, in Hollister *v.* Hollister, 6 Barr 451.

Even after the Act of 26th April 1850, this court maintained the same doctrine in Bishop *v.* Bishop, 6 Casey 416, by confining the act in its application, to the states of the Union, and holding that the principle of Dorsey *v.* Dorsey, and McDermott's Appeal, applied where the desertion took place in England.   Bishop *v.* Bishop is important for its conclusion, that a wilful and malicious desertion is not the natural and necessary inference from a wife's refusal to accompany her husband to a foreign country ; its repudiation of the fiction that the domicil of the wife is by implication that of the husband, when the purpose is to destroy her marital rights, and its declaration, that jurisdiction attaches fully only where both parties reside within the jurisdiction of the Court.

The opinion of our brother Thompson concludes with the distinct statement, that the respondent not being found to be

[Colvin *v.* Reed.]

within the jurisdiction of the Court, it was right in dismissing the libel.

The contrariety of decision in other states makes the examination useless in view of the fact that our own decisions give forth no uncertain sound. The New York and Massachusetts cases mainly accord with ours. Jackson *v.* Jackson, 1 Johnson 181; Borden *v.* Fitch, 15 Johns. 121; Barber *v.* Root, 10 Mass. 265; Hanna *v.* Turner, 14 Mass. 230; Harteau *v.* Harteau, 14 Pick. 181. Mr. Bishop (M. & D., § 155), lays it down, that to entitle the Court to take jurisdiction, it is sufficient for one of the parties to be domiciled in the country, and that service of a citation is unnecessary when it cannot be made. In all of the authorities cited in support of this position, the reasoning falls back upon the ground that marriage is a *status* of the citizen, and the right of the state to regulate it, and upon the inconvenience of the citizen being without a remedy.

These arguments have been noticed, and it has been shown, I think, that the principle finds a limit, when confronted by the equal and prior right of another state; and by the acts of a plaintiff, who has abandoned his domicil and his remedy, to take up a new domicil, where the defendant has never appeared. But whatever may be the result of the decisions in other states, we must stand upon the doctrine of our own cases.

The case stated provides for no judgment, if the opinion of the Court should be with the defendant below, who is the plaintiff in error. There can be only a judgment of reversal.

The judgment of the Court below is, therefore, reversed.