Radinovitz's Estate.

Argued January 7, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

*Joseph R. Rose,* for appellant.—The testimony fails to establish a marriage between Ida Davis and decedent: Hilton's Est., 263 Pa. 16.

Assuming that claimant has established a marriage, that marriage has been dissolved by divorce: Atherton v. Atherton, 181 U. S. 155; Haddock v. Haddock, 201 U. S. 562; Thompson v. Thompson, 226 U. S. 551.

Appellee is estopped from contesting the validity of the Ohio divorce decree: Richardson's Est., 132 Pa. 292; Duncan v. Duncan, 265 Pa. 464.

*Albert W. Sanson,* for appellee.—Assuming that claimant has established a marriage, that marriage has not been dissolved by divorce: Haddock v. Haddock, 201 U. S. 562; Cheever v. Wilson, 9 Wall. 108; Grossman's Est., 263 Pa. 139; Ray v. Ray, 10 Pa. D. & C. 733; Duncan v. Duncan, 265 Pa. 464.

OPINION BY MR. JUSTICE SCHAFFER, January 27, 1930:

The question here to be decided is which of two women was the lawful wife of the decedent and entitled to participate in the distribution of his estate.

Two issues are raised by the appellant, Fannie Radinovitz: Was Ida Davis, the appellee, married to the decedent at all, and if that union was valid, was a divorce from her obtained by decedent efficacious to sever their marital tie and so make lawful a marriage thereafter contracted between decedent and appellant?

There is nothing in the first contention whatever. Boiled down, it amounts to no more than that Ida Davis cannot produce record or written evidence of her marriage. If such a requirement were to be established, it is likely that thousands of lawful unions could be called

into question because marriage certificates had been lost or records had not been required. She showed by a witness who was present at the wedding that she was married to the decedent, who then went under the name of David Davis, on May 26, 1883, in Yonkers, New York, where apparently at that time no marriage records were kept; by another witness that they there lived together and were known as husband and wife; by a Jewish rabbi from Yonkers (they were Jews) that they were so known, and by him, that on March 3, 1909, the decedent, following the usage among Orthodox Jews, came to the rabbi and stated that he had lost his marriage certificate, whereupon, in pursuance of the rites of that sect, in the presence of witnesses, he, the rabbi, made written declaration of the fact, as stated by decedent, that he had been married to the appellee, and the document embodying this declaration written in the Aramaic language and signed by the rabbi was produced to the court below and there translated.

Seven children were born to the decedent and appellee. These "hostages to fortune," as Bacon calls them, did not prove what he says they are, "impediments to great enterprises......of......mischief," for the decedent left his wife and numerous progeny and went to the State of Ohio, where, under a different name, he procured a decree of divorce to be entered by a court of that state. The appellee had no actual notice of this proceeding, publication being the means resorted to in that respect and that notice not being directed to the wife in the name held by the decedent when he had married her, but in the one he had assumed in his new place of abode, and so was addressed to Ida Radivonitz. Just how a notice so directed could have any effect so far as Ida Davis, the appellee, is concerned, it would be difficult to state. In that proceeding, the decedent set forth that he had married Ida Radivonitz on May 25, 1883, and that she resided at Yonkers, New York. In the light of this testimony, particularly the declaration in

the divorce proceeding, we think it may be soundly concluded that the marriage between appellee and decedent was established. When the decedent came to apply for the marriage license in Philadelphia for his union with appellant on October 14, 1921, he did so in still another name, David Raduvanic, and in that document, under oath, stated that he had been married once before and that the marriage was dissolved by death. Under the name Raduvanic, he and appellant were married on the last named date.

It is argued by appellant that the Ohio decree of divorce is entitled to full faith and credit in Pennsylvania under article IV, section 1, of the Constitution of the United States, although appellee was not served in the proceeding and so far as the record shows had no notice of it whatever. It would be a far stretching of any rule for judicial procedure to hold that a husband may go into a jurisdiction other than that in which he and his wife had established their marital domicil, change his name, and affect her marital relation with him by publishing a notice directed to her under the new cognomen which he has assumed. We are of opinion that the notice as published amounted to nothing; but even if it had been directed to her in her proper name, the decree of divorce would in no way have affected her. A decree of divorce entered by the court of a state in which the parties husband and wife had never lived together, where there is no personal service on the respondent within the forum and where the respondent has not recognized the validity of the divorce at any time, is of no validity in this State: Duncan v. Duncan, 265 Pa. 464; Grossman's Est. (No. 1), 263 Pa. 139; Haddock v. Haddock, 201 U. S. 562.

The decree of the court below is affirmed at appellant's cost.