## Com. of Pa. ex rel. Carrie M. Nolde v. George H. Nolde, Appellant.

Argued March 14, 1932.

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*William A. Gray,* for appellant, cited: Atherton v. Atherton, 181 U. S. 155; Haddock v. Haddock, 201 U. S. 562.

*James F. Masterson,* and with him *Lemuel B. Schofield,* for appellee, cited: Commonwealth v. Mendelsohn, 83 Pa. Superior Ct. 593.

OPINION BY TREXLER, P. J., July 14, 1932:

This is an action for maintenance and support brought by the complainant, Carrie M. Nolde, against her husband, George H. Nolde.

The petition was filed in the Municipal Court of Philadelphia in March, 1927, and after a number of hearings was dismissed on May 29, 1929. In December, 1930 the court allowed a petition to hear further testimony as to the change in the physical condition of the complainant; her lack of earning capacity and her need of financial assistance. After hearing, the court

directed the respondent to pay the sum of $100 a week for seven weeks, and $75 a week thereafter for the support of his wife. No specific objection is raised to the difference between the weekly allowances. The defendant claims nothing should be allowed.

The first objection to the order of the court is that the petitioner is not the wife of the respondent. The foundation for this claim is that the parties were divorced by the courts of the State of Nevada on July 7, 1917. Evidence was produced to show that the husband was a resident of Nevada; that he was permanently employed from January, 1917 until March, 1918, when he enlisted in the Army. That on February 3, 1917 he filed a complaint in divorce, in Nye County, Nevada, on the ground of extreme cruelty; that the summons and a copy of the complaint were served on his wife in Reading, Pennsylvania; that an appearance was entered on her behalf by William Foreman, Esquire, member of the Nevada Bar, and that said appearance was entered for her by virtue of a power of attorney signed by Mrs. Nolde. Of course, if Mrs. Nolde voluntarily appeared, either in person or by counsel, duly authorized, she cannot question the jurisdiction of the Nevada Courts to grant the divorce. The courts of that State had jurisdiction of the subject-matter, and if she appeared and submitted herself to the jurisdiction, they acquired jurisdiction of her person: Commonwealth v. Parker, 59 Pa. Superior Ct. 74; Fries v. Wiser, 62 Pa. Superior Ct. 218.

The wife denies that she ever signed the power of attorney. A large amount of testimony was taken on the one hand to prove that she did, and on the other that she did not. She states that, on coming of age, she was informed that she had no guardian any longer, that she had to act for herself, and that she then signed some papers authorizing Mr. Bechtel to appear for her, but this had no relation to the Nevada proceedings. The paper offered in evidence she claims is a forgery.

We have her positive oath that the signature attached is not genuine. There were two experts called, father and son, who testified, after an examination of the signature and comparison with the admitted signatures, that she had signed the document, but they arrived at their conclusions through different processes of reasoning. An expert, called by the petitioner, testified that the disputed signature was not genuine, and illustrated his statement by charts in the presence of the court. There was no witness called into court that saw the petitioner sign the document, and the court, after personal examination of the various exhibits, and after hearing the testimony of the experts concluded that the document was forged. We do not feel constrained to come to a different conclusion, for a reading of the testimony throws considerable doubt upon the narrations of the witnesses called by the defendant.

The appearance of the attorney in Nevada based upon a forged power of attorney amounted to nothing. Being forged the paper had no real existence, and could not be the medium of conferring any jurisdiction over the person of the petitioner. There is some evidence introduced to support the plausibility of the claim that the petitioner had actually given up the contest with her husband, because of her being guilty of a transgression involving her marriage vows. There is no need of going into details, it will suffice for present purposes to say that this allegation was supported by the uncorroborated testimony of a detective, who gave a circumstantial account of the transactions that are said to have occurred, but the other witness, who it was claimed was present, disclaimed all knowledge of such details.

There is room for argument that the attorney who represented Mrs. Nolde in the first instance was not interested in the preservation of her rights, but was assisting the other side. The attorney is dead, and

we need not pass upon the truth of this accusation. We do, however, conclude that the claim of the defendant, that the petitioner had acquiesced in the proceedings for divorce and had appeared therein, is not substantiated.

The defendant claims that the dismissal of the first petition forever barred the petitioner from renewing her application for support, that it was res adjudicata, and no subsequent proceedings could be thereafter instituted. The answer to this is found in the opinion of the lower court, although not appearing in the record of the first hearing. The court, in the opinion filed in the present proceeding, states that it reluctantly dismissed the petition, the court then being of the opinion that the complainant could at least fairly well support herself. We need not quote any authority for the statement that proceedings in non-support are never determined, unless it appears on the record that there is an effectual bar to the proceeding, which prevents the court from entering the order. An order for support can always be opened, upon petition, if the circumstances which existed when the application, in the first instance was made, have altered. If it appeared affirmatively in this case the court refused the first petition because the petitioner was not the wife of the defendant, we assume that that would be a bar to the present proceedings, but nothing of that kind appears in the record, and we take what the court below set forth as the reason for the refusal of the first petition.

The remaining question to be determined is whether the court abused his discretion in making an order for the payment of $75 per week. The appellant received a legacy of $30,000 from his father; he receives $200 a month from the annuity contract. He has the income of a $200,000 trust fund, and he also had the income of one-fourth of the residuary of his mother's estate, the amount of which does not appear. The attorneys for appellee contend that he received upwards

of $26,000 a year, and there seems to be some support for this assertion. The health of the petitioner is in such a state as to probably require expensive treatment in hospitals and nursing. Under this testimony we think the award is not excessive.

The judgment of the Municipal Court is affirmed.