Commonwealth *v.* Custer, Appellant.

536

Submitted March 10, 1941.

Before KELLER, P. J., CUNNINGHAM, STADT-FELD, RHODES and HIRT, JJ.

*Leland W. Walker,* for appellant.

*Archibald M. Matthews,* District Attorney, for appellee.

OPINION BY KELLER, P. J., July 18, 1941:

The defendant, Pearson Custer, has appealed from his conviction on an indictment charging adultery.[1] In lieu of the evidence introduced at the trial before

---

[1] The charge of the court on the subject of reasonable doubt would, in any event, require a reversal of the judgment. The court said: "A reasonable doubt is a doubt for which a reason can be given." This was error: *Com. v. Baker,* 93 Pa. Superior Ct. 360, 362; *Com. v. Wiener,* 101 Pa. Superior Ct. 295, 298; *Com. v. Dauphinee,* 121 Pa. Superior Ct. 565, 590, 183 A. 807.

President Judge Boose and a jury, counsel have submitted an agreed statement of facts under Rule 56 of this court. It is as follows:

"Pearson Custer and Alverda Shultz were married in Somerset County on the 31st day of October, 1926. After their marriage, they resided in Somerset County for six years, during which time they became the parents of two children. On or about the first of September, 1932, Pearson Custer went to the State of Illinois. His wife, Alverda, did not follow him to that State but remained in Pennsylvania.

"Custer obtained a divorce from the Circuit Court of Lee County, Illinois, on the 4th day of May, 1936. The cause of the divorce, as set forth in the decree of the court, was desertion for a period of two years and upwards. Alverda Custer was not served with process; service was had under the Statute of Illinois by publication and notice of said divorce proceedings was sent the respondent wife by registered mail. She did not contest the divorce or cause an appearance to be entered on her behalf, nor has she moved to vacate the decree in Illinois. She has never been in Illinois.

"On the 6th day of May, 1936, Custer contracted a second marriage in the State of Illinois. The parties resided together in Illinois as husband and wife until November 26, 1939. On the 12th day of June, 1937, a son was born in Illinois.

"Thereafter, on the 28th day of November, 1939, Custer and his wife by his second marriage returned to Somerset County, Pennsylvania, established a home and cohabited together as husband and wife. Here a child was born on February 12, 1940. On the 14th day of May, 1940, Alverda Custer, the wife by the first marriage of Pearson Custer, filed an information charging Custer with adultery and thereafter an indictment was duly returned and Custer convicted of the crime of adultery by a jury and duly sentenced by the Court."

The appeal is based on the refusal of the court below to recognize the validity of the divorce granted the defendant in Illinois. It, therefore, deals largely with 'Conflict of Laws'.

All of the facts justify the conclusion that the appellant made a bona fide change of domicile to Illinois in 1932. He then became a citizen of that state and was subject to and entitled to the benefit of its laws. Almost four years later, and strictly in accordance with the Illinois statute, he was divorced from the prosecutrix by the judicial act of that state, on a ground recognized as a ground for divorce by the laws of this state, and by proceedings which would have warranted a decree in this state, if the residences of the parties had been reversed. He was at liberty to remarry and did marry, in Illinois, the woman with whom he has now been convicted of committing adultery. The conviction, besides the result as to him, brands the woman he married as his mistress and renders their second child illegitimate.

The court below instructed the jury that the Illinois decree had no force or effect in Pennsylvania and that the only question was whether the sexual act was committed. In the circumstances of this case, we think this was error.

We will discuss the matter under two main heads: (1) The validity of the marriage in Illinois. (2) The effect to be given in this State to the Illinois decree of divorce.

(1) THE MARRIAGE WAS VALID IN ILLINOIS.

Disregarding for the moment the question of the effect in this state of the Illinois divorce proceedings, the fact remains that the *marriage* in Illinois was unquestionably valid there. The general rule is that a marriage valid where contracted is valid everywhere and this rule has long been upheld in this state: *Phillips v. Gregg,* 10 Watts 158, 168; *Van Storch v. Griffin,* 71 Pa.

240, 244; *Stull's Estate,* 183 Pa. 625, 630, 39 A. 16; *McCausland's Estate,* 213 Pa. 189, 193, 62 A. 780; *Schofield v. Schofield (No. 1),* 51 Pa. Superior Ct. 564, 568. There are some exceptions to this rule. Corpus Juris (38 C. J., Marriage, sec. 3, p. 1277) states the proposition thus: "An exception to the general rule, however, is ordinarily made in the case of marriages repugnant to the public policy of the domicile of the parties, in respect of polygamy, incest, or miscegenation, or otherwise contrary to its positive laws."

The exception to the general rule is illustrated by *Stull's Estate,* supra. In that case, the decedent who had been divorced by his wife on the ground of adultery with a named person, went with his paramour to Maryland where they went through a marriage ceremony, solely to evade the ban on their intermarriage imposed by the Act of March 13, 1815, P. L. 150, sec. 9. They returned immediately afterwards to Pennsylvania and lived here together until his death. The marriage, though valid in Maryland was held invalid here, and the second 'wife' was refused letters of administration as his widow, on the grounds: (1) that their marriage was contrary to the positive statute of their domicile; (2) that it offended against the prevailing sense of good morals in their domicile, and (3) that it was a fraud on the government and people of Pennsylvania, since it was contracted in Maryland for the sole purpose of evading the law of their domicile. This case was distinguished in *Schofield v. Schofield (No. 1),* 51 Pa. Superior Ct. 564 (allocatur refused, 51 Pa. Superior Ct. xxxvi), in which it was held that the marriage in Delaware, of first cousins, domiciled in Pennsylvania, who had gone there to be married in order to evade the ban of the Act of June 24, 1901, P. L. 597, on the marriage of first cousins, was valid in this state, and that the effort to evade the act did not entitle either party to divorce or annulment on that ground alone. Judge

PORTER distinguished the Stull case as one in which a personal incapacity to marry *anywhere* had been imposed by statute and the very living together of the parties was contrary to good morals.

Since the recognition of *foreign* marriages rests on *comity* only (*Schofield v. Schofield,* supra, p. 569), the surrounding circumstances may and should be freely inquired into in deciding whether to accord validity to them. The closest scrutiny of the facts in this case shows no reason for taking it out of the general rule. Appellant's residence in Illinois was one of over seven years' duration. He did not go there in order to get a divorce or to marry his second wife. His second marriage was not performed until after he had lived there nearly four years; nor was it performed, or the divorce procured there, to evade the laws of this state, since a divorce could have been procured here on the same grounds. The agreed statement of facts states that the prosecutrix "did not follow him to that State [Illinois] but remained in Pennsylvania." The courts of Illinois have found that the circumstances of their parting amounted to desertion by her, and the propriety of that conclusion is not questioned here. It is the law of this state, as well as of Illinois, that it is the duty of the wife to go with her husband. Since it is not contended on behalf of the Commonwealth that the appellant did not have valid grounds for divorce, either in Illinois or in this state, his living with the woman he married in reliance on the decree is not against public policy or offensive to good morals. See *Com. ex rel. Thompson v. Yarnell,* 313 Pa. 244, 169 A. 370, in which it was held that her marriage to a man who had procured a divorce in Mexico, did not render a mother unfit to be given custody of her child. See also *Richardson's Estate,* 132 Pa. 292, 19 A. 82, which held that after a divorce procured under conditions somewhat similar to those here involved, the respondent might, by delay or remarriage,

lose the right to attack its validity.[2] That the legitimacy of a child is affected by this case is also a factor in sustaining the validity of the marriage. See *Thewlis's Estate*, 217 Pa. 307, 66 A. 519; *Wile's Estate*, 6 Pa. Superior Ct. 435; *Holben's Estate*, 93 Pa. Superior Ct. 472; *Mays' Estate*, 141 Pa. Superior Ct. 479, 15 A. 2d 569. Whether or not the marriage could validly have been performed here is not conclusive: *Schofield v. Schofield*, supra, p. 579. This marriage is therefore a sufficient defense to the indictment for it is not adultery to have sexual intercourse with one's wife.

The same result would be reached under the principles in the Restatement, Conflict of Laws, sec. 121. It is there said: "Except as stated in sections 131[3] and 132[4], a marriage is valid everywhere if the requirements of the marriage law of the state where the contract of marriage takes place are complied with." Comment e. states, in part: "That law, the law of the state in which the marriage is celebrated, governs the validity of the marriage in regard to ...... 5. The capacity of the parties to enter into the contract of marriage."

(2) THE EFFECT TO BE ACCORDED THE DIVORCE DECREE.

This heading may be considered under two sub-headings,

(a) Full faith and credit; (b) Comity.

(a) FULL FAITH AND CREDIT.

---

[2] This theory would apparently make the validity of the second marriage rest on the acts of the other spouse, which seems to us to be rather anomalous. In that way a respondent, by herself entering into a bigamous marriage, would validate both otherwise invalid marriages..

[3] This section concerns cases in which a party to a divorce is forbidden to marry again.

[4] This section concerns marriages that are polygamous, incestuous between members of different races, or void by statute of the domicile of a party.

In the Restatement, Conflict of Laws, sec. 113, it is stated:

"A state can exercise through its courts jurisdiction to dissolve the marriage of spouses of whom one is domiciled within the state and the other is domiciled outside the state, if

(a) the spouse who is not domiciled in the state......

(ii) by his or her misconduct has ceased to have the right to object to the acquisition of such separate home; ......"

This must be read with section 109, which provides:

"A state cannot exercise through its courts judicial jurisdiction over the status of a person, unless a method of notification is employed which is reasonably calculated to give him knowledge of the attempted exercise of jurisdiction and an opportunity to be heard."

Since the existence of grounds for divorce in this defendant are not denied and since registered mail notice is enough to satisfy the requirements of section 109, this divorce decree (according to the Restatement) would be entitled to *full faith and credit* under section 113(a) (ii) ; but there is no case in the appellate courts of this state or in the Supreme Court of the United States that has definitely gone so far, under that subdivision.

If Illinois had been the matrimonial domicile of the parties,[5] or if the wife had appeared and defended the suit in Illinois,[6] the decree would be entitled to full faith and credit under Article IV, section 1 of the Constitution of the United States, but neither situation exists here. The famous case of *Haddock v. Haddock,* 201 U. S. 562, is generally cited as authority for the

---

[5] *Atherton v. Atherton,* 181 U. S. 155; *Thompson v. Thompson,* 226 U. S. 551; *Com. ex rel. Cronhardt v. Cronhardt,* 127 Pa. Superior Ct. 501, 193 A. 484.

[6] *Davis v. Davis,* 305 U. S. 32, 40, 42; *Com. ex rel. Parker v. Parker,* 59 Pa. Superior Ct. 74.

proposition that full faith and credit need not be given to a decree obtained as this one was. That case, however, is not exact authority for the proposition, nor is it in conflict with the Restatement view, since in that case, it was found as a fact by the referee in New York (where full faith and credit was sought) that the husband had unjustifiably deserted the wife in New York before getting a divorce in Connecticut (p. 565). See, as tending toward a broader view of the full faith and credit clause, in divorce suits, *Davis v. Davis*, 305 U. S. 32, in which, however, respondent had contested the entry of the decree in the state granting it.

It is undoubted that the fiction that a wife's domicile follows that of the husband is not applied to give jurisdiction in divorce proceedings to the courts of the state where the husband happens to be, at least if she is not at fault; *Barber v. Barber*, 21 How. 582, 595; *Haddock v. Haddock*, 201 U. S. 562, 570, 571; *Colvin v. Reed*, 55 Pa. 375, 380. It is also undoubted that, in spite of the full faith and credit clause, the jurisdiction of the court entering a judgment or decree can always be questioned by a court in another state which is asked to give effect to the decree; *Com. ex rel. Cronhardt v. Cronhardt*, 127 Pa. Superior Ct. 501, 505-507, 193 A. 484, and cases there cited.

Most of the later cases in this state that refuse to give full faith and credit to divorce decrees obtained in another state without personal service on the respondent are distinguishable from this case. In *Fyock's Estate*, 135 Pa. 522, 19 A. 1056; *Heins's Estate*, 22 Pa. Superior Ct. 31, and *Duncan v. Duncan (No. 1)*, 265 Pa. 464, 109 A. 220, it was found as a fact by the courts in this state that the husband asking recognition of the decree had *deserted* his wife. Where such a finding is made full faith and credit need not be given: *Haddock v. Haddock*, supra. In *Com. ex rel. Nolde v. Nolde*, 105 Pa. Superior Ct. 334, 161 A. 450, it was found as a

fact that appearance of counsel for the respondent in divorce proceedings in Nevada had been entered on a forged power of attorney. In *Radinovitz's Estate,* 299 Pa. 264, 149 A. 317, the respondent had had no actual knowledge of the proceedings in Ohio because the man she had married under the name of Davis had sued her under *his* assumed name of Radinovitz and notice by mail had been addressed to her in this state under the latter name, although her name was still Davis. In these two cases there was clearly fraud on the court granting the divorce. Where that is found, the decree can be successfully attacked even in the state entering the decree: *Walton v. Walton,* 84 Pa. Superior Ct. 366; *Willets v. Willets,* 96 Pa. Superior Ct. 198; *Estok v. Estok,* 102 Pa. Superior Ct. 604, 157 A. 356; *Com. ex rel. Thompson v. Yarnell,* 313 Pa. 244, 251, 169 A. 370. *Com. v. MacMaster,* 88 Pa. Superior Ct. 37 and *Com. ex rel. Manzi v. Manzi,* 120 Pa. Superior Ct. 360, 182 A. 795, involved Mexican decrees, which are of course, not entitled to *full faith and credit.* In the MacMaster case, the Mexican decree was obtained by the husband during the pendency of a suit for divorce brought by him here, and it is an easy inference that the decree was obtained to terminate payments under an agreement to pay alimony pendente lite here and that the action was brought in Mexico because he did not have grounds for an action here. In the Manzi case it did not appear how long the plaintiff had been in Mexico to get the decree, or indeed, whether he had ever been there at all.

### (b) COMITY.

In each of the above cases, the facts mentioned were also enough to prevent recognition of the decree because of comity but the question of comity was not discussed in all of them. The Supreme Court definitely ruled in *Colvin v. Reed,* 55 Pa. 375 (1867), that a divorce granted in another state without personal service on the respondent in that state is not entitled to *full faith and*

546

*credit.* This, except in cases where the state granting the divorce is the matrimonial domicile (*Reel v. Elder,* 62 Pa. 308, 315) and in cases where the respondent appears and defends the action, is still the law of Pennsylvania and is binding on us. In *Colvin v. Reed,* supra; *Reel v. Elder,* supra; *Platt's Appeal,* 80 Pa. 501 (1876), and *Com. v. Taylor,* 11 Lancaster Bar 134 (1878), which are relied on by the appellee and the court below, it was also necessarily decided that effect would not be given the decree in question on the basis of *comity.* As pointed out above, whether recognition will be given because of *comity* depends on the facts of the particular case. In *Colvin v. Reed,* supra, and in *Platt's Appeal,* supra, publication only was resorted to in order to notify the wife of the pendency of her husband's divorce suit in a state in which he was not residing. In *Reel v. Elder,* supra, the husband who got the divorce in Tennessee had clearly deserted his wife in this state before he sued for it, and in addition, it appears from the reporter's statement of facts (p. 310) that he later spoke of the decree as a nullity, and that for the last three years of his life he lived with her, during which time she bore him three children. In *Com. v. Taylor,* supra, the husband was in Iowa only two or three months during which time the divorce was granted.

Besides these differences between the four cases above and the present one, the changes in our own divorce laws cannot be ignored. That the court in *Colvin v. Reed,* supra, was influenced by the fact that divorce decrees against non-residents could not be obtained in Pennsylvania without personal service on, or a general appearance entered for the respondent, is clear from the reference therein to the case of *Dorsey v. Dorsey,* 7 Watts 349, which so held. See also, *Ralston's Appeal,* 93 Pa. 133, 137, (1880). This was long recognized as the law of this state, in spite of the fact that the Act of March 13, 1815, P. L. 150, sec. 3, allowed service by pub-

lication, and section 2 allowed ex parte hearings in divorce actions. After much legislation on the subject of jurisdiction in divorce (see Freedman, Law of Marriage and Divorce in Pennsylvania, Vol. I, sec. 114) it is now generally recognized that the sweeping language of the Divorce Law of May 2, 1929, P. L. 1237,[7] gives jurisdiction to the courts to grant decrees against non-residents under procedure similar to that used by the Illinois court in the proceeding here in question. See *Nixon v. Nixon,* 329 Pa. 256, 266, 198 A. 154 (after the Act of 1929) and *Walton v. Walton,* 84 Pa. Superior Ct. 366 (under the substantially similar Act of May 9, 1913, P. L. 191 (No. 132).

With this formerly compelling reason for refusing recognition no longer a factor, there is every reason why, *in a proper case,* a divorce decree of another state should be recognized on the principle of *comity.* That this is a proper case is eminently clear from the facts detailed above. The appellant made a bona fide change of domicile to Illinois almost four years before the date of the divorce decree; the decree was on a ground recognized as ground for divorce here, and it shows on its face that the court was fully apprised of the facts of the marriage including the existence of the children; the notice to the prosecutrix (respondent) of the pendency of the action would have been sufficient in an action brought in this state if respondent had been living in Illinois; desertion by the prosecutrix is not denied;

---

[7] Section 15, as amended by the Act of June 10, 1935, P. L. 294, provides, in part: "The said courts [of common pleas] shall have power to grant divorces, and to annul marriages, notwithstanding the fact that the marriage of the parties and the cause for divorce occurred outside of this Commonwealth, and that both parties were at the time of the occurrence of said cause domiciled without this Commonwealth, and that the respondent has been served with the subpoena only by publication, as provided by this act."

the legitimacy of a child is involved, and the appellant is supporting the children borne him by the prosecutrix (3a). All this impels us to the conclusion that recognition should be given this decree, and we therefore recognize it as a sufficient defense to the indictment.

*Grossman's Estate,* 67 Pa. Superior Ct. 367, affirmed 263 Pa. 139, 106 A. 86, is not in conflict with the result reached here, as in that case the husband left this state soon after entering into a separation agreement with his wife, stayed in Nevada less than a year during which time the divorce was granted and then returned to Pennsylvania. In *Com. v. Shiffer,* 33 Lanc. Law Review 69 (1915), cited by appellee, the facts are not reported fully enough to show whether recognition on the principle of comity should have been accorded. To the extent that it is inconsistent herewith, the dictum in *Com. ex rel. Cronhardt v. Cronhardt,* 127 Pa. Superior Ct. 501, 507-8, 193 A. 484, is disapproved as too broadly stated.

The judgment of the court below is reversed and the defendant is discharged.