## Tunmer v. Tunmer

*Paul N. Barna* and *Anthony Cavalcante*, for libellant.

DUMBAULD, P. J., May 12, 1944.—In this proceeding in divorce, service was entirely by publication. The last known address of respondent is Paris, in the late Republic of France. Mail addressed to respondent at this last known address has been returned by the postal

authorities, with the notation that postal service to France is suspended on account of the occupation of France by Germany, now an enemy of the United States. The testimony discloses that libellant has a bona fide domicile in Fayette County, Pa.

A master, to take testimony and make report to the court, was duly appointed. Testimony was taken. The master recommended a decree a. v. m., finding that the allegations of the libel had been established by competent testimony.

The court, by order filed September 29, 1943, directed that the case be remanded to the master for a supplemental report on the following legal questions:

1. Is service of original process by publication alone upon a respondent residing in enemy-occupied territory good service?

2. Is the testimony sufficient to justify a finding of wilful and malicious desertion?

3. In any event, is it proper to enter a decree in favor of libellant while respondent, who has never been in America, is domiciled in a country occupied by an enemy?

The master, in a supplemental report, adhered to his original opinion that the testimony justifies a finding of wilful and malicious desertion and, relying particularly upon Najpajer v. Najpajer, 28 Dist. R. 859, recommended that the case be held in abeyance until such time after peace has been declared as will afford reasonable notice and opportunity to her, the respondent, to be heard in the matter before the court.

To this supplemental report, two exceptions are filed by libellant, alleging error in the recommendation, and insisting that "Said recommendation is contrary to the law of this Commonwealth, and in complete disregard of the positive evidence of the case".

There is thus raised an interesting question. On the one hand we have before us the legal status of a respondent in a divorce proceeding, domiciled in enemy

territory, pending the duration of the war with reference to her right to notice of any legal proceedings involving the marital status of such respondent.

On the other hand, we are called upon to adjudicate the rights of a litigant who has complied with every requirement of our statutory procedure to complete his case and has done everything preliminary to the award of a decree changing his marital status.

The early history of the proceedings, under Pennsylvania statutes, providing for divorce litigation, shows that divorce decrees against nonresidents could not be obtained unless personal service was made upon, or a general appearance was entered for, respondent. This rule seems to have been generally adhered to until the passage of The Divorce Law of May 2, 1929, P. L. 1237.

Since the passage of that act, the weight of authority seems to be that our courts have jurisdiction to grant decrees against nonresidents, although service is had only by publication, if the requirements of that act and of the local rules of court are completely complied with: Commonwealth v. Custer, 145 Pa. Superior Ct. 535, 546, 547.

We are inclined to hold that, where libellant in a divorce proceeding has fully complied with the provisions of The Divorce Law of May 2, 1929, P. L. 1237, and with local rules of court, outlining the practice in service by publication, such service by publication, after personal service has failed, constitutes due process.

The trend of recent decisions is to the effect that an action in divorce is not a mere action in personam, but that it is an action to define the marital status of persons domiciled within its borders, in which the State has a social interest.

To quote from the recent opinion of the United States Supreme Court, in the case of Williams et al. v. North Carolina, 317 U. S. 287, 298:

"Each state as a sovereign has a rightful and legitimate concern in the marital status of persons domiciled

within its borders . . . Thus it is plain that each state, by virtue of its command over its domiciliaries and its large interest in the institution of marriage, can alter within its own borders the marriage status of the spouse domiciled there, even though the other spouse is absent. There is no constitutional barrier if the form and nature of the substituted service . . . meet the requirements of due process."

In Nixon v. Nixon, 329 Pa. 256, Mr. Justice Kephart, speaking for the Supreme Court of Pennsylvania, said (p. 266) :

"In so far as this State's courts are concerned, service in a divorce suit by publication after personal service has failed is due process."

It thus appears that full compliance with the procedural requirements of The Divorce Law of May 2, 1929, supra, and the local rules of court constitutes due process, and entitles a resident of Pennsylvania to a proper decree altering his marital status, even though the other spouse is absent and has not actually received the notice provided for in the process of service by publication.

An excellent review of this question, in an exactly similar case by Corson, J., of the Court of Common Pleas of Montgomery County, is found in Jageler v. Jageler, 47 D. & C. 699.

This opinion has been published since the date of the resubmission of the case to the master, and the master's supplemental report. In our thinking, the correct view of our disputed question is set forth in the well-considered opinion of Judge Corson.

In that case, libellant's exceptions, similar in import to the exceptions here filed, were sustained and the decree in divorce was entered. We are constrained to likewise sustain the exceptions to the supplemental report of the master, and direct that a decree in divorce be entered in favor of libellant.

We, therefore, enter the following

*Decree*

Now, May 12, 1944, upon and after consideration, libellant's exceptions are sustained, and the supplemental report of the master is overruled, and now, May 12, 1944, the court, having heard this case and having fully considered and proceeded to determine the same as to law and justice appertain, do sentence and decree that George Tunmer be, and he is hereby divorced and forever separated from the nuptial ties and bonds of matrimony heretofore contracted between him, the said George Tunmer, libellant, and her, the said Madeleine Tunmer, respondent, and that henceforth all and every the duties, rights, and claims accruing to either the said George Tunmer or the said Madeleine Tunmer at any time heretofore in pursuance of said marriage shall and do cease and determine.

And further, the court do award to the said George Tunmer, libellant, against the said Madeleine Tunmer, respondent, costs in this behalf expended.