March Estate.

Argued May 23, 1967.   Before BELL, C. J., MUS-
MANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*Gibson Smith, Jr.,* for appellants.

*W. Burg Anstine,* with him *Anstine & Anstine,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, June 30, 1967:

This case arose in the Orphans' Court of York County sur a petition to vacate a widow's election to take against her (divorced?) husband's will. The sole issue on appeal is whether the Court below was correct in holding that the Full Faith and Credit Clause of the Federal Constitution, Art. IV, §1, did not require it to honor this Nevada divorce decree. That decree granted to March in June 1962, purported to dissolve the marriage upon which the election of the present appellee is based.

March was born and lived most of his life in York County, Pennsylvania, where he conducted a real estate business as a duly licensed real estate broker. March's first marriage resulted in the birth of seven children, who under his will dated May 26, 1964, are his sole legatees. After the termination of this marriage,* he married appellee on June 30, 1955, and established a

---

* The record does not disclose whether it was due to death or divorce.

marital domicile in York County, where he and appellee cohabited as husband and wife until *June 1956,* when they separated.

In February 1962, March leased his house in York County, and in March 1962 he voluntarily surrendered his real estate broker's license and requested that it be held as "inactive." In *April 1962,* he moved to Nevada and resided at a motel.

On June 1, 1962, March instituted an action in divorce against the appellee in the District Court of Ormsby County, Nevada. March's complaint in divorce was served on appellee in York, Pennsylvania, by mail (in accordance with the law of Nevada), and she was also given notice of the divorce suit by publication in Nevada, in accordance with the law of Nevada; however, she was never served with any process in Nevada, nor did she enter an appearance, nor was she represented in the divorce suit.

On June 11, 1962, appellee filed a bill in equity in York County seeking an injunction against March to enjoin him from proceeding with the Nevada divorce action. The Court of Common Pleas of York County granted a preliminary injunction. March was not personally served in the injunction proceedings, but service of the bill in equity was made on the York County attorney who had been previously employed at various times by March. March received notice in Nevada of this York County injunction before his Nevada divorce decree became final on June 29, 1962, but he was never served with any papers within the Commonwealth of Pennsylvania.

The facts are somewhat unusual and therefore will be recited at some length. March, after obtaining the Nevada divorce, continued to reside in Nevada until April 1963. During this time he did not own real estate, nor did he operate any business in Nevada or in York, Pennsylvania. From April 1963 until May 1965

March lived in various other states, including Florida and Arkansas. March returned to York County on two occasions during this period—in June 1963 and May 1964—for very short periods of time. When he executed his will on May 26, 1964, he described himself as a resident of York County. In June 1964, March filed a personal property tax return in York County, describing himself as a resident of Orlando, Florida; in November 1965, he filed a similar return in York County in which he described himself as a resident of Hot Springs, Arkansas. On May 26, 1965, March entered a nursing home located in York County, where he died November 14, 1965.

On October 10, 1956, March had instituted a divorce proceeding in the Court of Common Pleas of York County, which was never prosecuted by him and was still pending at his death.

The early leading cases concerning the validity of foreign divorce decrees held that "A decree of divorce entered by the court of a state in which the parties husband and wife had never lived together, where there is no personal service on the respondent within the forum [or entry of appearance by or for the respondent in the divorce action] and where the respondent has not recognized the validity of the divorce at any time, is of no validity in this State: Duncan v. Duncan, 265 Pa. 464; Grossman's Est. (No. 1), 263 Pa. 139; Haddock v. Haddock, 201 U.S. 562." *Radinovitz's Estate*, 299 Pa. 264, 267, 149 Atl. 317. Accord: *Grossman's Estate (No. 1)*, 263 Pa. 139, 106 Atl. 86; *Fyock's Estate*, 135 Pa. 522, 19 Atl. 1056.

However, in 1942 a radical change in this area of the law occurred. *Williams v. North Carolina*, 317 U.S. 287, 325 U.S. 226, *expressly overruled* the *Haddock* case's concept of matrimonial domicile and held that if a plaintiff was actually domiciled in a state granting the divorce decree, such decree was prima facie en-

titled to full faith and credit in every State. The *Williams* case does not require Pennsylvania Courts to blindly and unquestionably grant such faith and credit; it permits Pennsylvania Courts to investigate the *jurisdiction* of the foreign Court which granted the divorce decree to ascertain *whether that Court had jurisdiction over the subject matter of the litigation and whether the plaintiff was actually domiciled* in that state when the decree was granted.

Appellant relies principally upon *Commonwealth ex rel. Esenwein v. Esenwein,* 348 Pa. 455, 35 A. 2d 335, which was affirmed in 325 U.S. 279, and *Commonwealth ex rel. McVay v. McVay,* 383 Pa. 70, 118 A. 2d 144. In the *Esenwein* case, the Court refused to revoke an Order made by the County Court of Allegheny County for the support of Esenwein's wife. The support Order was made in 1922. In 1932, Esenwein sued for a divorce on the ground of indignities, but failed; in 1939, he sued again for a divorce on the ground of desertion, but failed. On November 12, 1942, the County Court, on his application, reduced the support Order. On February 1, 1943, he filed a petition to revoke the support Order, relying on *Williams v. North Carolina,* 317 U.S. 287. This Court distinguished *Williams v. North Carolina* and refused to recognize the Nevada divorce decree and refused to revoke the support Order. In this last case, in which Esenwein sought a revocation of the support Order, he admitted that he left Nevada immediately after obtaining his divorce and the Court found that the divorce proceedings in Nevada were merely a sham and a fraud (a) on the Nevada Court and (b) on the Allegheny County Court, because the facts showed that he had no intention of making his domicile in Nevada. The Court pertinently said (pages 457-458) : "There is no doubt of the power of the courts below to inquire into the jurisdictional facts necessary to confer jurisdiction on the Nevada

court: Bell v. Bell, 181 U.S. 175; Streitwolf v. Streit-
wolf, 181 U.S. 179; Andrews v. Andrews, 188 U.S. 15;
German Savings and Loan Society v. Dormitzer, 192
U.S. 125; Com. ex rel. v. Yarnell, 313 Pa. 244, 251;
Beale, Conflict of Laws (1935), sections 111.1 and
111.2.

"In making that inquiry the material to be exam-
ined is the record presented; it consists of the support
order concededly valid; the husband's petition to re-
voke, the wife's answer, the evidence, which included
the Nevada proceeding and decree, produced at the
hearing in the County Court. We must also take into
consideration the facts formally admitted at the argu-
ment before the Superior Court.

"If Esenwein had presented nothing to the County
Court but the duly certified divorce decree, he would
have shown himself entitled to a revocation of the or-
der, unless his wife then produced evidence overcom-
ing the prima facie effect of the decree. But he did
not rest on the decree alone; he put in evidence the
entire record of the Nevada proceeding leading up to
the decree thus affording his wife opportunity to make
from it any inferences of fact relevant in the inquiry
whether the jurisdictional fact of bona fide domicil
existed. These inferences, with the admitted facts stat-
ed in the opinion of the Superior Court, clearly show
that the jurisdictional fact of a Nevada domicil was
lacking."

The record and the additional admitted facts show
that Esenwein went to Nevada about the end of June
1941, lived in a hotel, was divorced September 8, 1941
and left Nevada immediately afterwards and went to
Ohio to live. He testified that he intended to make
Nevada his permanent place of residence, but the same
day he gave that testimony and received the divorce
decree, he left Nevada immediately and never returned.
His wife was not served in Nevada and did not appear

personally or by attorney, although notified in accordance with Nevada law. This Court said that "His acts spoke louder than his words," and that while testifying in the divorce case as to his intention to make Nevada his permanent residence "he was misleading that Court as to his domiciliary intent," and "the intention required for the acquisition of domicile of choice is an intention to make a home in fact;" or as sometimes expressed to acquire a domicile, a party must have his abode in one place, with intention of remaining there; and the elements of domicile are residence and animus manendi.

*Com. ex rel. McVay v. McVay,* 383 Pa., supra, is likewise relied upon by both appellants and appellee. In that case, a husband sought to terminate a support Order and vacate a judgment for arrears, and the principal question involved was whether full faith and credit should be given to a Decree of Divorce which was obtained by the husband in Nevada where the only service made upon the wife was service by publication. The parties were married in Pittsburgh in 1926 and resided there continuously until they separated in 1945. In January, 1946, Mrs. McVay obtained a support Order against her husband. In February, 1947, the husband instituted proceedings for divorce in Florida. One and one-half years later, the Florida Court dismissed his complaint and at the same time awarded his wife alimony in accordance with her counterclaim petition. On January 16, 1949, the husband went to Las Vegas, Nevada, and after the required residence filed a complaint in divorce which the Nevada Court granted on April 18, 1949. On January 10, 1950, the husband left Nevada and moved to California.

.. After obtaining the Nevada divorce, the husband discontinued all payments on the support Order.* This

---

* He never paid anything on the Florida alimony Order.

Court pertinently said (pp. 72-74): "If the Federal Constitution requires that the Nevada divorce be recognized in this Commonwealth, respondent's obligation to support his wife ceased automatically when the divorce was granted; conversely, if the constitutional mandate of full faith and credit does not compel such recognition the support order continued in force and the judgment for the arrears was properly entered.

"A decree of divorce is a conclusive adjudication of everything involved therein except the jurisdictional facts on which it is founded, and domicile, of course, is a jurisdictional fact. The bona fides of the domicile is subject to collateral attack in any other State by the spouse who did not appear in the court where the decree of divorce was granted. The full faith and credit clause of the Constitution requires that prima facie validity be accorded the divorce decree of a sister State, but the presumption of the existence of the jurisdictional prerequisite of domicile is rebuttable, the burden of proof to overcome it resting on the party attacking the decree.

"The present question for determination is whether respondent was a bona fide domiciliary of Nevada when he instituted the divorce proceedings in that State. There is no factual dispute over his activities during the period of his residence there; the only issue is in regard to the inferences to be drawn from the facts to which he himself testified. *He admitted that his primary reason for moving to Nevada was to obtain a divorce;** on the very day of his arrival in Las Vegas he consulted an attorney whom he had previously retained for that purpose, and he started proceedings immediately after the required six weeks' residence. While the motive that impelled him to seek the new domicile is not in any sense conclusive it does constitute an im-

---

* Italics throughout, ours.

portant factor to be taken into consideration in determining whether he really intended to make his home in Nevada. When he came to Las Vegas he took a room in a private dwelling; there he was joined by his former secretary, whom he married five days after his divorce was granted; the wife had claimed in the Florida divorce action that this secretary was the cause of their domestic difficulties. In September the couple moved to an apartment in Las Vegas which he rented on a month to month basis. . . ."

The husband then opened a bank account in Nevada, took several temporary small jobs and had a telephone installed, listed under his own name. He testified that he then decided that the opportunity for work would be greater in California than in Nevada and therefore he moved to Glendale, California and has remained a resident of California ever since. This Court and the Court below concluded that he was not a bona fide domiciliary of Nevada when he instituted his action there in divorce. "This was because the superficial indicia of domiciliary intent were outweighed in the total factual picture by the unavoidable inference that, having gone to Nevada for the sole purpose of securing a divorce and marrying his former secretary, respondent undertook to work there at casual and temporary jobs merely while marking what he considered sufficient time to give color to his alleged acquisition of a bona fide domicile." (page 75)

While the principles of law hereinabove set forth are well established, their application to factual circumstances and conditions is often difficult. In the instant case, we believe the appellee who is attacking the Nevada Decree has failed to meet the burden of proof which is necessary to overcome the presumption of validity which attaches to the Nevada divorce Decree under the Full Faith and Credit Clause of the Constitution of the United States.

While March may have gone to Nevada for the sole purpose of obtaining a divorce Decree and did not intend to make Nevada his permanent domicile, the record does not contain sufficient facts to overcome the presumption of the validity of the Nevada Decree. In *Com. ex rel. McVay v. McVay*, 383 Pa., supra, the husband admitted in his testimony that he went to Nevada to obtain a divorce Decree and marry his secretary. In *Com. ex rel. Esenwein v. Esenwein*, 348 Pa., supra, the husband left Nevada the day he obtained his divorce Decree. In the instant case, March continued to live in Nevada for 10 months after he obtained his Decree in divorce. The only evidence concerning his activity in Nevada, or, indeed, concerning his intention not to live there, was the fact that he did not own real estate or conduct a business in that State. However, many persons do not own real estate, and there is no evidence that March conducted any business whatsoever from the time he left Pennsylvania until he died.

We are aware of the difficult burden of proof placed upon appellee, as well as upon every other citizen similarly situated. Suspicion and conjecture are not sufficient to satisfy appellee's burden of proof. Greatly as we desire to protect the citizens of Pennsylvania from foreign divorces, we cannot evade or circumvent the Constitution of the United States or alter the fact that appellee has failed to meet her burden of proof. To hold otherwise under the facts and circumstances of this case would, we believe, make the Full Faith and Credit Clause* of the Constitution an empty and practically meaningless provision, and as nearly everyone knows, would invalidate an enormous number of foreign divorce decrees and remarriages, and

---

* Article IV, §1, provides: "Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State."

thereby subject these unsuspecting parties to indictments for adultery and bigamy, and far worse, would illegitimatize their new children and issue.

Decree reversed, each party to pay own costs.

Mr. Justice ROBERTS concurs in the result.

Mr. Justice COHEN took no part in the consideration or decision of this case.