## Stump, Appellant, v. Stump.

Argued October 24, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*J. Colvin Wright,* for appellant.

*John N. Minnich,* for appellee.

Opinion by Keller, J., February 1, 1934:

Libellant appeals from an order of the court below directing him to pay the respondent alimony pendente lite.

His libel was filed under the Act of May 2, 1929, P. L. 1237, sec. 12, to secure an annulment of his marriage with respondent on the ground that it was bigamous. He claims, (1) that it makes no difference that he knew at the time of the performance of the ceremony with respondent that she had a husband living from whom she had not been divorced; because the Act of 1929, differing from the Act of April 14, 1859, P. L. 647, does not limit the application for

annulment to an "innocent or injured party." See Baker v. Baker, 84 Pa. Superior Ct. 544. We think the language of section 12 of the Divorce Code of 1929 is broad enough to sustain this claim, and that in all cases of bigamous marriage "either party" may now apply for annulment. See Report on Bill Codifying and Consolidating the Laws Relating to Divorce and the Annulment of Bigamous Marriages (Legislative Reference Bureau, Bulletin 27, p. 13).

He also claims (2) that the Divorce Code of 1929 makes no provision for the allowance of alimony pendente lite to a respondent wife in such proceedings. To this we cannot agree. The Act of 1929 treats libels for divorce and petitions for annulment of alleged bigamous marriages, except as just above stated, on the same plane. The title of the Act includes them both. The grounds for divorce and annulment of marriage are comprised under one heading or subdivision; the grant of jurisdiction (sec. 15) is the same in both; and section 12, which relates to the annulment of bigamous marriages, specifically provides that the supposed or alleged marriage may be declared null and void "in accord with the principles and forms hereinafter prescribed for cases of divorce from the bonds of matrimony;" thus, in effect, establishing the same *procedure* for the annulment of a bigamous marriage as is prescribed for divorce from the bonds of matrimony: Report on Bill Codifying and Consolidating the Laws Relating to Divorce, etc., supra, p. 13.

Section 46 of the Act—now amended by the Act of May 25, 1933. P. L. 1020—provides that in cases of divorce from the bonds of matrimony, "the court may, upon petition, in proper cases, allow a wife reasonable alimony pendente lite and reasonable counsel fees and expenses." In passing upon the Act of 1859, supra, which provided that in case of bigamous marriage "the jurisdiction shall be exercised and *proceedings*

*conducted according to the principles and forms which
are or shall be prescribed by law for cases of divorce
from the bonds of matrimony"*— almost precisely the
language used in section 12 above —, we held that
"one of the principles established in our law with
respect to actions of absolute divorce is that, pending
the proceedings, a wife destitute of a separate estate
will be allowed a reasonable sum for alimony and for
the expense of suing or defending the action" and that
"under the provisions of the Act of 1859, this principle
likewise applies to a wife contesting her husband's
action for a decree of nullification under that act":
Baker v. Baker, 84 Pa. Superior Ct. 544, 545, 546. In
providing that the principles and forms prescribed for
cases of divorce from the bonds of matrimony should
apply to petitions for annulment of bigamous marri-
ages the legislature intended, in our view, to enact a
general provision which would obviate the necessity of
specially mentioning 'annulment of marriage' every
time it made subsequent provision relative to the prac-
tice and proceedings in cases for divorce from the
bonds of matrimony; but that those provisions are to
be construed and interpreted as if the subject 'annul-
ment of marriage' were specially included in the sub-
sequent sections relating to pleading and practice in
cases of absolute divorce; and that, accordingly, it
must be read into and applied to section 46 relating
to alimony pendente lite. The Act of 1929, codi-
fying and consolidating the laws relating to di-
vorce and the annulment of bigamous marriages
is presumed to have been passed by the General
Assembly with knowledge of the law on the sub-
ject as it then was, and of the construction placed
by the courts on such existing statutes as might be
incorporated into the Code, and in so far as those
statutes have been incorporated into the Code, they
will be understood as continuing the law as declared

except to the extent that the Code clearly and definitely changes it: Davidson v. Bright, 267 Pa. 580, 589, 110 A. 301; Mindlin v. O'Boyle, 278 Pa. 212, 217, 122 A. 294; Gratz v. Ins. Co. of N. A., 282 Pa. 224, 234, 127 A. 620; Keim v. City of Reading, 32 Pa. Superior Ct. 613, 620; Grakelow v. Nash, 98 Pa. Superior Ct. 316, 325, 328. See also Baker v. Baker, supra; York v. York, 107 Pa. Superior Ct. 522, 164 A. 87.

(3) Appellant's third contention is that no alimony can be awarded respondent, because she did not deny that the marriage was bigamous when it was performed. But she does aver that her former husband has since died and that after his death the libellant and she entered into a common law marriage and have since cohabited as husband and wife.

If after the death of respondent's first husband she and the libellant had been married again by an officiating minister, pursuant to a license duly issued, one would scarcely contend that the libellant could proceed under the Act of 1929 to have his prior marriage with the respondent annulled. What the State is concerned with in such proceedings is the *present status* of the parties, not what it may have been in the past. If the parties are now legally married and have been legally cohabiting as husband and wife, the law—that is the law governing divorces, etc.—will not now give itself concern with the relationship which may have existed between them before their legal marriage, or take jurisdiction to declare that their past status was a bigamous marriage, if it has since been changed into a legal marriage. The law does no such vain thing. If at the time of presenting the petition for annulment it should appear that the marital status of the parties at that time was legal and that they were then legally married and were husband and wife, it will not use its process to decree that a prior marriage, which has been followed by a valid marriage, was bigamous, null

546

and void. It is to the interest of the State that persons living together in the family relation should be married and that the relationship of husband and wife and that of the family be preserved and not be lightly destroyed. No useful purpose would be subserved by decreeing that a past marital status was bigamous and void if before its annulment was asked for the parties had created a valid, legal marital status; and the statute does not require or contemplate its being done.

This being so, we must bear in mind that the law of this State recognizes a common law marriage as valid, legal and binding. It has the same force, effect and sanctity as one performed by a minister or magistrate. And if such a marriage was entered into between libellant and respondent after the death of the latter's prior husband and at a time when both parties were able to contract a valid marriage it cured the defect of the prior marriage, to the extent that thereafter no annulment of the prior marriage would be decreed, but the present legal status would be preserved until either gave the other just cause for divorce.

Of course mere cohabitation does not constitute a common law marriage: Murdock's Est., 92 Pa. Superior Ct. 275. We are using that latter term in the sense placed upon it by the settled decisions of the Supreme Court, and of this court. It is not necessary at this time to elaborate upon the matter.

The assignment of error is overruled and the order of the court below is affirmed at the costs of the appellant.