Commonwealth ex rel. Knode *v.* Knode, Appellant.

**564**

Argued May 1, 1942.

Before KEL-
LER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and
KENWORTHEY, JJ.

*John S. Van Kirk*, with him *William Black*, for appellant.

*Samuel G. Wagner*, with him *Dorothea M. Wagner*, of *Wagner & Wagner*, and *Harry Shapera*, for appellee.

OPINION BY HIRT, J., July 23, 1942:

On January 25, 1939 upon complaint of relatrix as the wife of the defendant, charging him with nonsupport, the County Court of Allegheny County adjudged him guilty 'as charged' and ordered him to pay $80 monthly 'for the support of his wife.' No appeal was taken from that order, but after full compliance with it for about a year and one-half, defendant petitioned the court to vacate the order and dismiss the proceeding on

the ground that relatrix was *not* his wife. At the hearing there was testimony of a former marriage of relatrix with one George Shoop on February 13, 1913. But the presiding judge refused to permit any inquiry into the former marriage of relatrix to another man unless the defendant first heard of it after January 25, 1939, the date of the order of support referred to above. On defendant's appeal to this court *(Com. v. Knode,* 145 Pa. Superior Ct. 1, 20 A. 2d 896) we held that defendant was unduly restricted in the scope of his proofs by that ruling and we remitted the record for further hearing to give the defendant an opportunity to prove his case.

The testimony taken on the rehearing in the court below is entirely sufficient to support the court's findings of fact, in substance, that: On February 13, 1913, relatrix innocently entered into a ceremonial marriage with one George Shoop in the County of Lebanon without knowledge of his prior subsisting marriage. At that time George Shoop was lawfully married to another woman and his former marriage had not been dissolved either by death or divorce. About two weeks after the marriage ceremony, Shoop was charged with bigamy and with perjury in making false answers to questions in his application for a license to marry relatrix. Shoop pleaded guilty to both of these charges in the Court of Quarter Sessions of Lebanon County and was sentenced on both convictions. No proceedings were ever instituted by this relatrix to have her supposed marriage with George Shoop formally annulled by judicial decree. On these findings, the lower court concluded as a matter of law that because the marriage of relatrix to Shoop was bigamous, it was a nullity, and, therefore, did not prevent her from entering into a lawful marriage with defendant. Accordingly, the court refused to vacate the existing order upon defendant for her support and to dismiss the proceedings, but on consideration of relatrix' petition, upon which testimony was taken at the same hearing, increased the support order

to $100 per month, an amount not disproportionate to defendant's earnings. This order, the court, in subsequent proceedings, refused to modify. Defendant appealed.

It is conceded, as it must be, that the fact of defendant's marriage contract with the prosecutrix has been finally adjudicated by the order of support, unappealed from, entered on January 25, 1939 and defendant cannot now deny that he was a party to a marriage ceremony with relatrix. The single question, therefore, is whether she then was incompetent to enter into a valid marriage contract with defendant. If so, he is relieved from every obligation to support her; otherwise not. *Com. v. Knode,* supra.

The principles controlling this appeal were discussed in *Klaas v. Klaas,* 14 Pa. Superior Ct. 550, where, in an opinion by Judge PORTER, we held a marriage to be valid under circumstances almost identical with those presented here. The wife, there, had been married to one Lake who then had another wife living; he was subsequently convicted of bigamy. There was no judicial annulment but nevertheless this court said: "The Act of 1859 provides a method by which a judicial record may be obtained, formally declaring void, marriages which by the law are void and recited by the act itself to be void. It is a means furnished by the legislature for rendering facts and their effect judicially certain. It is in the nature of a proceeding in divorce. It is in aid of the party injured, and its beneficial provisions should be invoked and carried out by the persons so unfortunately situated as to be in need of its aid. We cannot concede, however, that a marriage void by reason of bigamy on the part of one of the parties is any the less void because proceedings were not brought under the Act of 1859 to declare the marriage void. The marriage of the respondent with William Lake was absolutely void. She was thus free to marry the present libellant . . . . . ."

A decree of annulment in reality does not annul the marriage, for it does not speak only from its date; it merely declares that the marriage was void from the very beginning. It does not create a new status but, on the contrary, affirms that there has been no change in status. A nullity in law is not comparative, to be measured by degrees; it is absolute, implying that the thing has no legal existence. Such decree is no more than a declaratory judgment, judicially determining with certainty and finality that there never was a valid marriage. Many circumstances arise where it may be the part of wisdom to take advantage of available procedure for a declaratory judgment under the Divorce Code of 1929, 23 PS 1, if the validity of a marriage is involved, otherwise under the Act of May 22, 1935, P. L. 228, 12 PS 847. But no penalty attaches if that procedure is not pursued, except that which results from a reliance upon a status or a right which does not exist. It follows that "the nullity of a void marriage may be shown in any legal proceeding where it is a pertinent matter"; it may follow as a necessary consequence from agreed facts, (Newlin's Estate, 231 Pa. 312, 80 A. 255) or be established in any manner by competent evidence. Thus in Heffner v. Heffner, 23 Pa. 104, an action in ejectment, it was said: "A man having a wife in full life is utterly powerless to make a valid contract of marriage, and his attempt to do so is entirely nugatory." There, the testimony of the wife was received as competent to prove that her supposed husband was then married to another, rendering her marriage to him void ab initio. In Com. v. Mudgett, 174 Pa. 211, 253, 34 A. 588, a woman married to the defendant, charged with murder, was made a competent witness for the Commonwealth by evidence that defendant had a wife by a former marriage, living and not divorced. There are other cases to the same effect, demonstrating that where the issue is relevant, a marriage may be proven void by any evidence suffi-

cient for the purpose regardless of whether it has been so declared in an annulment proceeding.

Defendant places much emphasis upon the following language of *Com. v. White*, 22 Pa. Superior Ct. 67: "The state has a vital interest in the purity of the marriage relation, and it seems to have been the legislative intention to require that those who have once married shall not while both are living enter into another alliance until the first marriage has been legally dissolved or its invalidty established by a judicial proceeding." In the opinion in that case, (also by Judge PORTER) some doubt was expressed as to the right of an innocent party to a bigamous marriage, to wed again without first procuring a decree of annulment of the prior marriage. The answer to defendant's contention, in relying upon the above dicta, is that the Klaas case expresses the sounder view. It is consistent with the recognized procedure followed in many cases and is regarded a leading case on the subject. See Annulment of Marriages in Pennsylvania, (Reader), 41 Dickinson Law Rev. 37; Freedman, Marriage and Divorce, p. 877.

There can be no more persuasive testimony of the nullity of a marriage, than a conviction of the husband of bigamy. Relator, therefore, is the wife of defendant and as such is entitled to support.

Order affirmed.