Maurer, Appellant, *v.* Maurer.

Argued March 2, 1948. Before RHODES, P. J., HIRT, ROSS, ARNOLD and FINE, JJ. (RENO and DITHRICH, JJ., absent.)

*Roy B. Pope,* with him *Michael J. Evansha, Ralph J. Johnston* and *Johnston & Pope,* for appellant.

*Arthur Silverblatt,* with him *Roscoe B. Smith,* for appellee.

OPINION BY HIRT, J., July 23, 1948:

Libellant, Ray L. Maurer, and his former wife, Rena Maurer, were married in 1934. He subsequently committed adultery with one Virginia Daugherty and Rena Maurer divorced him on that ground. In that action Virginia Daugherty was named co-respondent and was served. The decree of divorce was entered on December 22, 1937. Five days later, libellant and Virginia Daugherty went to Elkton, in the State of Maryland, and were there married. She is the respondent in the present proceeding brought by Ray L. Maurer to annul his marriage with her. From his petition for a decree of annulment additional facts appear. Both libellant and respondent have been citizens and have been domiciled in Pennsylvania all of their lives. At the time when they contracted the marriage in Maryland they were both residents of Hazleton in Luzerne County in this state. Following the marriage ceremony they *immediately* returned to Pennsylvania where they lived together in Lehighton and again in Hazleton until January 2, 1946. Rena Maurer is still living.

The Act of March 13, 1815, P. L. 150, 6 Sm. L. 286, § 9, 48 PS 169 provides: "The husband or wife, who shall have been guilty of the crime of adultery, shall not marry the person with whom the said crime was committed during the life of the former wife or husband. . . ." There is no similar law, statutory or otherwise, in the State of Maryland prohibiting a husband, divorced for adultery, from marrying his paramour in that state. The question raised by respondent's demurrer to the libel in this case is whether the marriage, valid in the State of Maryland where contracted, was

valid also in Pennsylvania, notwithstanding the disability imposed on libellant by the Act of 1815. A majority of the judges of the lower court were of the opinion that libellant was not entitled to have the Maryland marriage annulled and joined in an order sustaining the demurrer. Judge APONICK dissented. In our view the question raised by libellant's appeal is clearly ruled by *Stull's Estate, Morehouse's Appeal,* 183 Pa. 625, 39 A. 16. The order will be reversed.

The factual background of *Stull's Estate* is almost identical with that of the present proceeding. Stull had married one Hannah M. Lewis who was still living at the time of the appeal in that case. She had divorced him because of his adultery with one Ada Widdup. Following the decree of divorce Stull went to Maryland with Ada Widdup, his paramour, and went through a marriage ceremony with her there to evade the prohibition of the above 1815 Act. They returned to Pennsylvania at once where they lived together as husband and wife until his death. The marriage though valid in Maryland was held to be void by our Supreme Court and Ada Widdup was refused letters of administration on her claim as Stull's widow, on three grounds: (1) that the foreign marriage was contrary to the positive statute of Pennsylvania, the domicile of the parties; (2) that it was contrary to the public policy of the government of the domicile and offended against the prevailing sense of good morals, and (3) that the marriage, contracted in Maryland to evade the positive law of the domicile, was a fraud on the government and the people of Pennsylvania. Any one of these reasons was regarded by Mr. Justice GREEN, who wrote the majority opinion, as sufficient to stamp the Maryland marriage invalid in this state.

In *Stull's Estate* it was conceded that the parties went to Maryland to be married for the very purpose of evading the 1815 Act. The petition in the present case does not contain an averment to that effect. Such

purpose, however, may be inferred from admitted acts
of the parties. Neither of them had ever lived in Mary-
land nor acquired any rights of a domiciliary of that
state. Their continued residence in Pennsylvania was
interrupted only by a trip of but eight miles across the
border into Maryland and, after the marriage ceremony,
an immediate return to this state where they have lived
continuously ever since. But whether a decree of an-
nulment ultimately must be entered in this case does
not depend upon an intention of the parties to perpe-
trate a fraud on this state. The prohibition of the 1815
Act is only rhetoric if we must recognize the marriage
as valid, merely because the parties may not have made
the excursion into Maryland for the purpose of evading
the law of this state. In *McCalmont v. McCalmont*,
93 Pa. Superior Ct. 203, a petition for a declaratory
judgment as to the appellant's married status was re-
fused by this court, but without prejudice. In the opin-
ion in that appeal Judge KELLER discussed the question
of intentional law evasion thus: "It is a matter of little
moment whether it be true, as appellant alleged in his
petition, and appellee denied in her answer, that he
had no knowledge at the time he married the appellee
in Maryland, following her divorce in this State, where
both parties reside, that the final decree in said divorce
proceedings forbade her marriage to the appellant. The
decree only declared the law as laid down in section 9
of the Act of March 13, 1815, 6 Sm. L. 286, 289; and he
was bound to know that the marriage was forbidden."
Freedman on Marriage and Divorce, § 24, p. 52, refers
to the law of this state, on this point as decided in
*Stull's Estate*, with this comment: "Refinements in dis-
tinction might be sought to countenance the view that
the absence of the element of evasion might remove the
consequence of invalidity in Pennsylvania, which found
expression in Stull's Estate. The strong language of the
opinion, however, would seem to foreshadow the view
that even if such a marriage should be contracted with-

out express design to evade the laws of this state, the policy of Pennsylvania would prevent its recognition."

. Following a recital of the facts the opinion in *Stull's Estate* says this of the 1815 Act: "By the ninth section it will be perceived there is an absolute prohibition of any subsequent marriage between the guilty person and the paramour during the life of the former wife or husband. It forbids the marriage relation to be contracted in the most general terms. The guilty party 'shall not marry the person with whom the said crime was committed.' A personal incapacity to marry is imposed. The necessary meaning of this language is that they shall not marry at all, in any circumstances, or at any time, or any place, so long as the injured party is living. So far as the purpose and meaning of this statute are concerned it is of no consequence where such subsequent prohibited marriage takes place. The relation itself is absolutely prohibited, and hence is within the operative words of the statute, without any reference as to where the marriage occurs." There is a division of authority outside of Pennsylvania on the question whether a valid foreign marriage may be declared void in the state of the domicile under similar circumstances. Cf. 32 A. L. R. 1116; 51 A. L. R. 325. And the fact that the decision in *Stull's Estate* was not unanimous reflects the difficulties inherent in the question involved. But this may be said of the holding of that case: it was decided in 1898 and after 50 years it is still the law of this state. It has been followed (by our Court in *Schofield v. Schofield (No. 1)*, 51 Pa. Superior Ct. 564; *Commonwealth v. Custer*, 145 Pa. Superior Ct. 535, 21 A. 2d 524) and has not been overruled or modified by the Supreme Court. The doctrine of *Stull's Estate* has had recognition elsewhere. In the course of a comprehensive article on Marriage and the Domicil by Joseph H. Beale and his collaborators, in 44 Harvard Law Review 501, at 513, it is said: "In several states the law forbids the guilty party to a divorce for adultery to marry

his accomplice. This provision is peculiarly in protection of the first marriage. There is so vital a moral and social policy of the state involved that the usual desire to protect the second marriage cannot overcome it. The state of domicil of the parties will refuse to predicate the status on a marriage contract valid where made, and the marriage is therefore void." Of more significance is the treatment of the question by the American Law Institute. The Restatement, Conflict of Laws, recognizes exceptions to the general rule that a marriage is valid everywhere if the law of the state, where the marriage takes place, is complied with; among them, §132(d), the "marriage of a domiciliary which a statute at the domicil makes void even though celebrated in another state." In the preceding section 131(b), the Restatement enunciates the rule: "If by statute each party to a divorce granted in the state is forbidden for a certain time or during the life of the other party, to marry again, and one party goes into another state and marries, being permitted to do so by the law of that state, the marriage is valid everywhere, even in the state where the divorce was granted, unless . . . (b) the statute which forbids the parties to marry is interpreted as being applicable to the marriage of domiciliaries in another state . . ." The rule is equally applicable where but one party is forbidden by statute to marry after divorce. The interpretation of the Act of 1815 in *Stull's Estate* brings the instant proceeding within the above exception of §131(b).

The majority opinion of the lower court (erroneously in our view) attached importance to the fact that libellant here sought an annulment based upon his own unlawful acts. It is true that the libellant, by living openly with his paramour, following a marriage with her invalid in Pennsylvania, has enjoyed to satiety the fruits of his violation of the law under the guise of respectability. But the relationship between the parties in Pennsylvania both before and after the Maryland marriage

was unlawful and the question could have been raised at any time and the illegal alliance ended by criminal charge or other process, available not only to libellant's former wife, but to anyone. The amending Act of July 15, 1935, P. L. 1013, 23 PS 12, provides in effect that where a supposed marriage is invalid for any lawful reason, such marriage may be declared null and void on the application of either party. In *Com. ex rel. Knode v. Knode*, 149 Pa. Superior Ct. 563, 567, 27 A. 2d 536, we said: "A decree of annulment in reality does not annul the marriage, for it does not speak only from its date; it merely declares that the marriage was void from the very beginning. It does not create a new status but, on the contrary, affirms that there has been no change in status." In an annulment proceeding it is immaterial that the petitioning spouse is not an injured or innocent party. *Com. ex rel. DiDonato v. DiDonato*, 156 Pa. Superior Ct. 385, 389, 40 A. 2d 892. The Act confers upon either spouse the right to have the illegality of the marriage judicially determined; that is the only advantage given the libellant in this case. If void in Pennsylvania, the marriage was no less a nullity, regardless of whether so declared in an annulment proceeding. *Klaas v. Klaas*, 14 Pa. Superior Ct. 550; *Com. ex rel. Knode v. Knode*, supra. Moreover, the respondent has no rights meriting consideration. She as well as the libellant was guilty of the acts which ended his first marriage and they were equally guilty of a direct and positive violation of the 1815 Act by their marriage while domiciled in Pennsylvania. Between the parties there are no rights, arising from their illegal alliance, for the court to protect. The advantage given the libellant by the 1935 Act in permitting him to prosecute an annulment proceeding, is more seeming than real. Without a decree of annulment, under the cases above cited, the invalidity of the present marriage might be declared on a charge of bigamy in the event of libellant's marriage with another in the future; or in a proceeding brought

by respondent for her support; or on her claim against his estate after his death.

There is no wholly satisfactory answer to the question involved in this case, either on the facts or the law. But *Stull's Estate* not only is the present law of this state, binding upon us as such, but its holding is to be preferred to the alternative of saying that the Act of 1815 is meaningless when adulterers step across the state line to be married.

A libel is demurrable if it reveals on its face that a valid cause of action is not alleged. But in a proceeding for divorce or annulment, the interest of the state renders desirable the application of "the usual rule permitting the filing of an answer on the merits after a demurrer has been overruled." Freedman on Marriage & Divorce, §567, p. 1210. Respondent may file her answer and the action will be heard on the merits.

Order reversed; demurrer overruled with a procedendo.