## DeRosay *v.* DeRosay, Appellant.

334

Argued October 9, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*James N. Lafferty,* with him *Bryan A. Hermes,* for appellant.

*Colbert C. McClain,* for appellee.

OPINION BY ARNOLD, J., March 8, 1948:

This is an action for the annulment of an allegedly absolutely void and bigamous marriage under §12 of the Divorce Law of 1929, P. L. 1237, as amended (23 PS §12). The case was referred to a master whose recommendation of an annulment decree was adopted by the court and the respondent appealed.

Section 12 of the Divorce Law reads: "In all cases where a supposed or alleged marriage shall have been contracted, which is absolutely void by reason of one of the parties thereto having a spouse living at the time of the supposed or alleged marriage, . . . may, *upon the application of either party,* be declared null and void, in accord with the principles and forms hereinafter prescribed for cases of divorce from the bond of matrimony." (Emphasis supplied.) Under the prior Act of 1859, P. L. 641, as amended by the Act of 1927, P. L. 71, only the innocent or injured spouse could bring such action.

In *Commonwealth ex rel. Knode v. Knode,* 149 Pa. Superior Ct. 563, 27 A. 2d 536, speaking through Judge HIRT, we said: "A decree of annulment in reality does not annul the marriage, for it does not speak only from its date; it merely declares that the marriage was void from the very beginning. It does not create a new status but, on the contrary, affirms that there has been no change in status. A nullity in law is not comparative, to be measured by degrees; it is absolute, implying that the thing has no legal existence. *Such decree is no more than a declaratory judgment,* judicially determining with certainty and finality that there never was a valid marriage." (Emphasis supplied.) Therefore the only inquiry in this case is whether the parties, who had lived together as man and wife, had ever been validly married. If not, either party may obtain a decree evidencing that such status or thing had no legal existence.

Kingsley DeRosay, the present libellant, married Frances A. Schaeffer on June 4, 1917, at Philadelphia.

She will be referred to in this opinion as the first wife. She bore him two children. He left her in 1930 and moved to a new address. At this time he was about thirty-five years of age and had a large salary.

At the time of the separation or within a few months thereafter, the libellant became acquainted with Clara Valeska Seip, the respondent. She was then twenty-five years of age, a capable actress who had, for some years, appeared in vaudeville and stock companies in New York and Chicago, and various points between. There then occurred what the respondent calls a courtship, although she admits that she knew the libellant was married, and that on a number of occasions his son by that marriage was with them. She testified that they fell violently in love, that they spent much time together, and that he was frequently received at her apartment. They desired to marry but recognized the first wife as an obstacle to that purpose, and they discussed with calculating frankness both this impediment and the economic situation resulting from the first wife having obtained an order of support of $140.00 per month against her husband.

To eliminate the first wife they jointly decided that he should bring an action of divorce in Philadelphia County, but discovered that the first wife preferred to defend, and after hearing on the merits the libel was dismissed. The appellant knew that the libellant had no grounds for divorce. Not to be thwarted, and after full discussion, they next planned that he should get a Mexican divorce, but both understood that it would be unrecognized in Pennsylvania. They testified that they believed that marriage after such Mexican divorce would make a criminal prosecution against either of them less likely.

The libellant by mail applied to the Mexican courts for such a decree, and in a very short time received by mail a duly certified "decree of divorce" from the court in Mexico. The respondent knew that the present libel-

lant had never been in Mexico either before or after this divorce. The pretended judgment of that court was pronounced upon a "confession" of the libellant's first wife upon a failure to answer after being served with notice to do so in *six days*. While it is not of importance, the first wife avers that she never received such a notice but only a copy of the final decree. No argument is needed to show that this pretended decree was absolutely void.

Upon the pretext that he was now free by the decree of a court of a country in which he had never been, these parties decided that there was sufficient dislodgment of the first wife, and two days thereafter went through a marriage ceremony in Connecticut, the license being obtained on the representation that he was divorced. The respondent did not testify that she would not have married him if she had known that the Mexican divorce was invalid. The whole tenor of their testimony and their actions was that the Mexican divorce enabled them to make obeisance to propriety, by going through the form of a marriage which both knew he was legally incapable of contracting. While the appellant testified that she believed such marriage was "valid", she also stated that they intended and planned to "remarry" upon the death or divorce of the first wife.

After the Connecticut ceremony the parties lived together in Pennsylvania, and frequently discussed their ambiguous relationship. The present respondent fully recognized the doubt concerning the legitimacy of any children, and for a while they adopted means so that no child would be conceived. Later, relying, as she says, upon the promise of the appellee to marry her upon any dissolution of his first marriage, a child was conceived, and was born July 28, 1935. No proceeding had yet been brought by the first wife to divorce him. They thus lived together until August 15, 1944, when the respondent left the libellant because of his intimacy with another woman. At this time the age of the present re-

spondent was about the same as that of the first wife when the present libellant commenced the courtship of a woman ten years his junior.

After the separation the present parties desired to sell real estate held by them by the entireties, and the question arose as to the rights of the first wife. An arrangement was made whereby they executed a deed, and obtained from the first wife a written release of any interest, in exchange for which they paid her some $6,000. In this agreement the first wife also released the libellant from support, her surviving child having reached his majority, and she agreed to apply for a divorce in Philadelphia County. She secured this divorce on June 4, 1945. While the present respondent is described in the agreement as libellant's wife, such so-called acknowledgment cannot constitute a marriage because his first wife was still living.

The separation between the present parties continued, and when the first wife obtained a divorce and the present libellant became free of her, he no longer desired to marry (or as she phrases it, remarry) the respondent. Instead, he brought this action of annulment.

Both parties testified that they agreed to remarry upon the death or divorce of the first wife. Since either event would, of itself, release this husband from any support to the first wife, or from the danger of criminal prosecution, both parties must have comprehended that their marriage in Connecticut was a pretense which in the future was to be translated into a reality.

If, without the fictitious Mexican divorce, these parties had, by words in praesenti and before witnesses, declared that they were man and wife (a true common law marriage), such pretended marriage would have been void because the man was already married. If, after such attempted common law marriage, the first wife died and the present parties continued to live together and were reputedly man and wife, they still would

not achieve the marriage status unless they would subsequently marry.

It was legally impossible for libellant to marry prior to the divorce by the first wife in 1945. After her divorce they neither lived together nor had any marriage, either common law or ceremonial.

The present appellant strongly argues that because of the appellee's conduct with the respondent he is barred or estopped from bringing the present action. But there was no fraud on the respondent; neither was innocent, and both were fully aware of all of the facts. The present appellant did not change any position of hers to her detriment because of any representations by him,—except, of course, his promise to legitimatize their illegal relationship, if, as and when it became possible. The fact that they, as husband and wife, purchased real estate and sold it, did not change the situation. This was a holding out that they were married, but it is admitted that they were not. We cannot read into §12 of the Divorce Law of 1929 what the Legislature deliberately deleted from the Act of 1859, to wit, that the application for annulment must be made by the innocent and injured spouse.

Lastly, appellant alleges that after the first wife's divorce appellant brought an action for support on behalf of herself and child in Montgomery County, resulting in an order on him, and that since he did not there raise the question that he was not her husband, he cannot subsequently do so, citing *Com. ex rel. Highland v. Highland,* 159 Pa. Superior Ct. 633, 49 A. 2d 529.

Reducing the present case to its simplest terms, it must be conceded that the libellant and the respondent were never validly married at any time, unless, and only unless, the support proceedings and order in Montgomery County constituted a marriage. Regardless of what purpose either of the parties had concerning these proceedings, clearly and obviously neither of them had the faintest notion that the participation therein was a

340

marriage. Neither cohabitation nor reputation constitutes "marriage" but they are only circumstances from which marriage may be presumed, and such presumption will wholly disappear in the face of proof that no marriage had, *in fact,* taken place: *Nikitka's Estate,* 346 Pa. 63, 29 A. 2d 521; *Cline's Estate,* 128 Pa. Superior Ct. 309, 194 A. 222; *Caddy v. Johnstown Firemen's Relief Association of the State of Pennsylvania,* 129 Pa. Superior Ct. 493, 196 A. 590; *Balanti v. Stineman Coal & Coke Company et al.,* 131 Pa. Superior Ct. 344, 200 A. 236; *Baker v. Mitchell et al.,* 143 Pa. Superior Ct. 50, 17 A. 2d 738. Where, as here, it is an admitted fact that there is no marriage, it cannot be created by implication. It is entirely possible that the failure of the present appellee to question his marriage to the appellant in the support proceedings may prevent his raising the question thereafter, because the instant proceeding is but declaratory of a status then existing. We, of course, will not pass upon that question until it is before us.

Decree affirmed at the cost of the appellee.