## Commonwealth ex rel. Johnson *v.* Johnson, Appellant.

Argued March 19, 1956. Before HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ. (RHODES, P. J., absent).

*David Freeman,* with him *Leonard J. DeNote,* for appellant.

*H. N. Fineman,* with him *Morris Passon,* for appellee.

OPINION BY WRIGHT, J., July 17, 1956:

This is an appeal by David Johnson from the refusal of the court below to vacate an order of support in favor of Leila Johnson, the said order having been entered on the assumption that Leila was David's wife. Appellant's present contention is that, because his original union with Leila was bigamous, the prior support order is not res judicata so far as the issue of marriage is concerned and must now be vacated.

On December 19, 1951, there was a hearing on Leila's original petition for support. At that time both Leila and David appeared in open court. The

record reveals the following colloquy (italics supplied): "Q. I understand, Mr. Johnson, you are willing to support *your wife*, it is just a question of amount, is that correct? A. That is right. Q. Is there any reason why you should not contribute $18.00 per week for the support of *your wife*? A. Well, contributing $18.00 per week, Judge, I have to keep myself". The court thereupon made an order of $18.00 per week. Appellant became in arrears and a bench warrant was issued. The parties again appeared (September 22, 1952) in open court, at which time a conditional reconciliation was effected. Because of appellant's subsequent default, the support order was (October 23, 1953) reinstated, at which time the record of the court hearing discloses the following (italics again supplied): "Q. The only thing we want to know, it is a fact that in September 1952 *your wife* came into this court and said that you were going to be living together; and it is a fact you only stayed for several days and then left? A. That is true . . . When *my wife* brought me here in this Court I was making enough money to give her some of what she asked for . . . Q. Were the things you bought for the [other] woman for *your wife*? A. When I bought those things I wasn't with *my wife*. When I bought those things I wasn't living with *my wife* . . ."

At the hearing (November 18, 1955) on the petition to vacate, the following circumstances were disclosed. Appellant married one Ruby Gay in Florida on July 23, 1936. He married Leila Goshen in Louisiana on May 15, 1944. Leila testified, and the lower court believed her, that she did not know of appellant's prior marriage. Appellant and Leila thereafter set up housekeeping and lived together in Florida. On September 14, 1944, in a Florida proceeding, appellant's marriage to Ruby Gay was dissolved by a decree in divorce. Appellant and Leila continued to live together in Florida

for several months, and thereafter moved to Pennsylvania, where they continued to live together until the original separation in 1951. It was clearly established that, during all these years, appellant and Leila were known as husband and wife, and that appellant presented Leila to his and her friends as his wife. And as heretofore demonstrated, in the original support proceeding appellant not only did not assert that Leila was not his wife, but on the contrary expressly acknowledged her status as such.

Appellant concedes that an order for the support of a wife, unappealed from, is generally res judicata as to all defenses which might have been raised in the proceeding for support. See *Commonwealth ex rel. Jamison v. Jamison,* 149 Pa. Superior Ct. 504, 27 A. 2d 535. However, he argues that an exception to the rule exists where there is proof of the incapacity of one of the parties to marry, in which event he contends that the order of support is not res judicata and may be vacated at any time. He relies on certain language in *Commonwealth ex rel. DeShields v. DeShields,* 173 Pa. Superior Ct. 233, 98 A. 2d 390, in which it was stated "that the fact of a marriage or its validity could not be inquired into on a petition to vacate the order after the time for appeal had elapsed, in the absence of an offer of proof of incapacity of one of the parties to marry or a subsequent divorce or annulment of the marriage." In the *DeShields* case, although there was no ceremonial marriage, the parties were concededly competent to marry. We refused to vacate on the ground that the original support order was res judicata. We pointed out that the lower court was justified, since appellant had failed to appeal from the original order, in assuming that a common law marriage had taken place.

In *Commonwealth ex rel. Highland v. Highland,* 159 Pa. Superior Ct. 633, 49 A. 2d 529, the parties had

been married to each other and divorced. They then resumed cohabitation. Pointing out that "They then had the status of single persons and could enter into a valid remarriage", we refused to vacate a support order from which no appeal had been taken, approving the lower court's rejection of appellant's offer to prove that there had actually been no remarriage and that the relationship was meretricious. In *Commonwealth ex rel. Knode v. Knode,* 145 Pa. Superior Ct. 1, 20 A. 2d 896, the husband presented a petition to vacate a support order alleging that the wife had been incompetent to contract the ceremonial marriage because she had a prior husband still living at the time. The following language from our opinion in that case is significant:

"The court below was entirely right in holding that, for the purposes of these proceedings, the fact of the defendant's marriage to the prosecutrix had been adjudicated by the order for support entered January 25, 1939. At the hearing held that day the prosecutrix testified that she married the defendant on September 29, 1918, and that they had lived together as man and wife until May 20, 1938. He did not deny the marriage nor appeal from that order. He cannot now, for the purposes of this case, deny that he married the prosecutrix as testified to by her . . . But if at the date of that marriage *the prosecutrix was incompetent* to marry him, or anybody else, because of her then having a lawful husband living, from whom she had not been divorced, and *her incompetency to marry existed during the entire time the parties lived together* as husband and wife, the defendant should be permitted to prove it and be relieved of the duty of supporting some other man's wife. *The incompetency to marry in such case resulted from her own act and was not caused by any act of the defendant."* (italics supplied)

In the *Knode* case, we stated that mere proof of the marriage of the wife in 1913 would not prove her incapacity to marry in 1918, "and even if such incapacity existed then, it might have been removed by the death or divorce of her legal husband during the period she and defendant lived together as man and wife, and the marriage confirmed after her incapacity was removed." On a subsequent appeal to this court, *Commonwealth ex rel. Knode v. Knode*, 149 Pa. Superior Ct. 563, 27 A. 2d 536, it was disclosed that the marriage of the wife in 1913 was itself void, since the first husband had a wife living at that time. We therefore held that the lower court properly refused to vacate the support order.

Appellant argues that, even though he may not be the innocent party, he may nevertheless obtain an annulment, citing *Wagner v. Wagner*, 152 Pa. Superior Ct. 4, 30 A. 2d 659. If appellant had actually secured a decree of annulment, his liability under the support order would be terminated: *Commonwealth ex rel. DiDonato v. DiDonato*, 156 Pa. Superior Ct. 385, 40 A. 2d 892. However, in the *DiDonato* case the wife's disability had never been removed, and there could have been no defense in the annulment proceding that the marriage had been confirmed, for instance by a subsequent common law marriage. See *Stump v. Stump*, 111 Pa. Superior Ct. 541, 170 A. 393. It expressly appears that the basis of our decision in the *DiDonato* case was that the order, unless set aside, would "compel an innocent husband to support another man's wife".

The only appellate decision involving an attempt by the husband to relitigate the fact of marriage by the introduction of evidence of his own incapacity to marry is *Commonwealth ex rel. v. May*, 77 Pa. Superior Ct. 40. In the *May* case, upon the hearing of a pe-

tition by the wife for an increase, the husband attempted to show on cross-examination that the wife was aware that he had a prior wife living at the time of the marriage. The court held that the former order, unappealed from, was an adjudication of the marriage of the parties. While the language of the *May* case has been criticized as establishing too general a rule, the principle set forth therein, insofar as it applies to the facts of the present appeal, has never been limited. As in the *May* case, we are here faced with an attempt by the appellant to exploit his own wrongdoing in an effort to free himself from the support order. Furthermore, appellant's incompetency did not exist during the entire period the parties lived together as husband and wife, but was removed within a few months after their marriage. Appellant's failure to appeal from the original support order warrants the assumption that the marriage was confirmed after his disability was removed. In the words of Judge PIEKARSKI, "there is an affirmance by the defendant himself of their marital status at a time when both parties were competent to enter upon that status."

In our view of the case, we need not pass upon appellee's contention that, under the law of Florida, of which we are to take judicial notice,[1] the fact that the parties lived together as man and wife in Florida, after appellant's disability had been removed, ratified the marriage. "A marriage is considered voidable rather than void, though prohibited by law, when it is possible for the parties to subsequently ratify it when there has been removed a disabling or voiding impediment": *Jones v. Jones,* 119 Florida 824; 161 So. 836.

The order of the lower court is affirmed.

---

[1] Uniform Judicial Notice of Foreign Law Act of May 4, 1939, P. L. 42, 28 PS 291. And see *Lorch v. Eglin,* 369 Pa. 314, 85 A. 2d 841.