## Commonwealth ex rel. Schultz, Appellant, *v.* Schultz.

Argued December 14, 1959. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Victor J. Roberts,* with him *High, Swartz, Childs & Roberts,* for appellant.

*Roland Fleer,* for appellee.

OPINION BY GUNTHER, J., March 24, 1960:

This appeal is from the order of the court below vacating a previous order of support. On January 12, 1955, Josephine M. Schultz, appellant, filed a complaint in the Court of Common Pleas of Montgomery County for a bed and board divorce on the ground of indignities, in which she alleged that she and the appellee, Theodore L. Schultz, were married on April 30, 1936 in New York. In October of the same year, she filed a complaint for support before a Justice of the Peace and appellee was held for court under bail. At a preliminary hearing on said charge before the Chief Desertion and Probation Officer on November 22, 1955, the parties amicably agreed that an order for support

should be entered in the amount of two hundred fifty dollars per month. At this hearing, appellant testified that she was married to appellee on April 29, 1938 and that she was the lawful wife of appellee. Appellee was present with counsel when these statements were made and admitted appellant to be his wife. He then entered into his own recognizance in the amount of five thousand dollars for the faithful performance of his duty to support his wife. The Court of Quarter Sessions of the Peace of Montgomery County entered its decree adjudging appellee guilty of non-support, and signed an order for support as amicably agreed to.

On October 9, 1957, the dormant complaint for divorce was activated when appellee petitioned the court for leave to amend his answer to deny his marriage to appellant and on November 4, 1957 filed an amended answer to this effect. On November 18, 1957, a master was appointed to hear the case. Also, on November 15, 1957, appellee presented a petition to the Court of Quarter Sessions of the Peace seeking to suspend the payments under the support order previously entered pending the outcome of the divorce action. An answer was filed to this petition and the issue raised was placed on the argument list but never disposed of. On November 22, 1957, appellant filed a petition in the Court of Common Pleas for leave to discontinue her divorce action. An answer was filed, argument had on the petition and answer, and on January 21, 1958, the rule for leave to discontinue was discharged, the court holding that the appellant having selected the forum, the appellee should be permitted to establish whether or not a valid marriage existed between them. The complaint in divorce was then amended to show the date and place of marriage to be April 30, 1957 in Philadelphia.

At the hearing of the divorce action appellant appeared but presented no evidence to sustain the indig-

nities charged. The master thereupon received evidence restricted to the question whether a valid marriage subsisted between the parties. At the conclusion of this hearing, the master recommended to the court that the divorce, on the ground of indignities, be refused because the charge was not sustained and, also, because the parties never entered into a valid marriage contract. Exceptions were filed to this report by appellant and, after argument, the court entered an order refusing the divorce for the reason that there was no evidence of indignities. It did not decide the question whether the parties were lawfully married to each other or not.

Subsequent to this adjudication, on January 23, 1959, appellee filed a petition in the court below to vacate the support order on the ground that the findings of the master in the divorce case established that the relationship between the parties was meretricious and that at no time was it converted into a valid marriage. Since the appellant's exceptions to the master's recommendation were dismissed, he contended that such a recommendation was approved by the Court of Common Pleas. An answer, admitting all allegations of fact, was filed in which, however, it was denied that the validity of the marriage was decided or that appellee was entitled to have the support order vacated. Appellant contended that the question of marriage was res judicata and not subject to attack since appellee failed to appeal from the original order of support. After argument on the petition and answer, the court below entered an order for a hearing for the purpose of receiving testimony on the question whether a fraud may have been perpetrated upon the court in connection with the entry of the original support order.

At the time of hearing, appellant again objected to any attempts to prove an invalid marriage. When appellee tried to introduce the entire testimony taken at

the divorce hearing, the court below, over objection of appellant, admitted so much of this record which constituted admissions on the part of both parties. On this evidence, an opinion and order was handed down on July 31, 1959, vacating the support order for the reasons that the parties were not married and because a fraud was perpetrated on the court by appellant in procuring said support order. From this adjudication, the present appeal was filed.

The basic question presented on this appeal is whether appellant, at the time she sought an order for support, perpetrated such a fraud upon the lower court as to warrant a revocation of the order previously entered.

At the time of hearing this issue, neither party to this appeal gave any testimony whatever. The fraud, if any, therefore had to be determined from the transcript of testimony given at the divorce proceeding and the proceeding for support before the Chief Desertion Officer of Montgomery County. The divorce proceedings disclosed that appellant and appellee met sometime in 1933 while both parties were married. Appellant was divorced from her husband, Michael Carr on September 17, 1934. Appellee became divorced from his wife on January 29, 1940, upon the application of his wife, Elizabeth May Schultz. In 1936, appellant and appellee commenced their relationship and cohabitation which continued until 1954, when appellee separated himself from their common domicile. The court below concluded that since no marriage was averred by appellant subsequent to January 29, 1940, and since appellant must have known of the pre-existing marriage of appellee at the time their regular cohabitation began in 1936, there could have been no valid common law marriage and appellant could not have become the lawful wife of appellee. When, therefore, appellant sought and obtained a support order in 1955, she perpetrated

a fraud upon the court. In further substantiation of the fraud, the court below referred to the discrepancy in the dates of marriage alleged in the divorce complaint and that given at the preliminary hearing for support. Since the complaint in divorce was filed prior to the time the support proceedings were commenced, the court below concluded that appellant must have known that the date of marriage testified to in the support proceedings must have been false and, therefore, a fraud upon the court.

The court below properly concluded that the order, unappealed from here, became a final adjudication of the fact of appellee's marriage to appellant and that this question became res judicata. *Commonwealth ex rel. Highland v. Highland,* 159 Pa. Superior Ct. 633, 49 A. 2d 529; *Commonwealth ex rel. Isaacs v. Isaacs,* 124 Pa. Superior Ct. 450, 188 A. 551; *Commonwealth ex rel. v. Iacovella,* 121 Pa. Superior Ct. 139, 182 A. 727. It also properly concluded that the support order was res judicata except upon an offer of proof of the incapacity of one of the parties to remarry, citing *Commonwealth ex rel. Johnson v. Johnson,* 181 Pa. Superior Ct. 172, 124 A. 2d 423. It further held that in the case at bar, "although the relationship existed from 1936 until 1954, the incapacity of Theodore L. Schultz to marry was removed in 1940 when Elizabeth May Schultz was granted a decree in divorce a.v.m. Therefore, the petitioner cannot have the support order vacated merely on the ground that the relatrix was not his wife." Nevertheless, the court concluded that the support order must be vacated because appellant could not have entered into a lawful marriage on any of the dates alleged; that all of this was fully known to the appellant; that she made no attempt to prove any kind of marriage subsequent to January 29, 1940, and, therefore, a fraud was committed upon the court.

We are unable to agree with the reasoning of the court below. The cases cited above preclude an attack upon the validity of the marriage. Furthermore, the evidence admitted in this record clearly established the fact that appellee, when purchasing a new home in 1942, admitted the marital relationship: "Q. And at that time you took title in joint names, designating her as Josephine Schultz, your wife? A. That is right. She made all the arrangements and I went and signed it. What else could I do? After all, we were moving into a neighborhood—Q. I am not here to argue with you as to what else you might do, but at least from that time, then, you say, did you not, that you regarded yourselves as husband and wife? A. From that time you say? That is right . . . Q. And at that time did you have Mr. Drucker draw the deed for the Mill Road property? A. No. Q. What was it that happened at the time of the purchase of the property at Mill Road that changed Mr. Drucker's approach so that after that he knew her as Mrs. Schultz? A. Well, he said to me, 'I see you went and did it', and I said, 'Yes', and that is all that there was to it." When questioned about the preliminary hearing with the desertion officer, appellant testified: "Q. And at the time of your conference with Mr. Richards, the desertion officer, on November 22nd, 1955, you admitted that Josephine Schultz was your wife, did you not? A. That is right, I did. I could see no point in denying it, because—well, no one ever asked me any different, plus the fact that—well, again, I thought that by virtue of law I was—"

In *Commonwealth ex rel. Johnson v. Johnson*, supra, we held that if one of the parties was incompetent to marry because of then having a lawful spouse living from whom no divorce had been obtained, and this incompetency existed during the entire time the parties lived together as husband and wife, the party charged with the duty of support should be permitted to prove

this fact and be relieved of the duty to support another man's wife. However, we held that the incapacity must exist during the entire time the parties cohabited. If, therefore, appellee intended to rely on this ground, he had to show the incapacity to marry during the entire period in question.

In *Commonwealth ex rel. Highland v. Highland,* supra, we said: "But relatrix was relieved of proof of a valid remarriage, by the admission of the respondent in the non-support proceeding . . . There can be no doubt as to the scope of respondent's admission; he gave bond for compliance with the support order 'for the maintenance of his said wife Alice, so neglected.' Relatrix was relieved from proving what was admitted by the respondent; since he confessed his guilt he is not in a position to assert that marriage by some ceremony or agreement was not otherwise established." See, also, *Commonwealth ex rel. Johnson v. Johnson,* supra.

The court below, in holding a fraud has been perpetrated on it, relies in part on the inference that appellant actually knew of appellee's incapacity to marry since his pre-existing marital status was not dissolved until 1940. There is nothing in this record to factually support such an inference. The only reference as to knowledge appears as to the marital status in 1934 and 1935 when the parties were having secret meetings and trips. If such proof of knowledge of incapacity was to be relied upon, the burden of proving such by clear and convincing evidence was on the party alleging it.

The basis for the entry of a support order is an existing marital status. No fraud can be predicated on this admitted status. It is inconceivable that the appellee would have deliberately admitted a marriage which in fact and in law did not exist only to visit upon himself a support order in the amount of two

hundred fifty dollars per month. We believe, therefore, that the petition to vacate this order was an attempt by him to exploit his own wrongdoing in an effort to free himself from the obligation of support.

While appellant freely admitted the discrepancies as to the dates alleged for the marriage, and even admitted that such falsehood may have constituted perjury, in the strict sense, such admissions could be construed as a fraud as to date but not fraud as to a status admitted by both parties. A marital status may be valid regardless of the date alleged and any discrepancy in date may affect the credibility of the person alleging the same. Since, in our opinion, this was the real basis for determining that fraud has been perpetrated, we cannot sustain the revocation of support order otherwise regular or proper.

The order of the court below is reversed.