## Grygo v. Grygo

*Boyd H. Walker*, for plaintiff.

*John M. Metzer*, for defendant.

KOCH, J., October 14, 1963.—Plaintiff filed a complaint praying for the annulment of a marriage to the defendant which, she alleges, is void. The master and examiner has submitted his report in which he recommends that a decree be entered declaring the marriage null and void.

We are obliged to return the case to the learned master and examiner for the reasons which we shall outline.

If the prayer of plaintiff's complaint is to be granted it is necessary for her to establish that the facts fall within the provisions of the Act of May 2, 1929, P. L. 1237, sec. 12, as amended, 23 PS §12:

"In all cases where a supposed or alleged marriage shall have been contracted, which is absolutely void by reason of one of the parties thereto having a spouse living at the time the supposed or alleged marriage, or, if, for any other lawful reason, the said supposed or alleged marriage was absolutely void when contracted, such supposed or alleged marriage, may, upon the application of either party, be declared null and void, in accord with the principles and forms hereinafter prescribed for cases of divorce from the bond of matrimony."

The complaint avers, and the master and examiner have found, that the plaintiff, Beatrice M. Grygo, and Edward T. Grygo, were "allegedly" married on April 21, 1951, by the Rev. R. J. Sturgill in Elkton, State of Maryland. Paragraph 6 sets forth "That the plaintiff avers the marriage ceremony to the defendant on April 21, 1951, as aforesaid, was performed while Joseph L. Affronti, a former husband of the plaintiff, *was still living*. On September 13, 1948, the said Joseph L. Affronti, a minor, by Luigi Affronti, his Guardian, had

obtained a Decree of Divorce from the Plaintiff on the ground of adultery committed with defendant, the Decree of Divorce prohibiting the marriage of Plaintiff to Defendant, during the lifetime of the said Joseph L. Affronti, in the Court of Common Pleas of Lehigh County, as of June Term 1948, No. 4." (Italics supplied.)

The provision of the act, 23 PS §12, supra, upon which the plaintiff relies is that there is ". . . any other lawful reason, . . ." Specifically, it is plaintiff's contention that her marriage is void by virtue of the operation of the Act of March 13, 1815, P. L. 150, 6 Sm. L. 286, sec. 9, 48 PS §169, which provides as follows:

". . . the husband or wife, who shall have been guilty of the crime of adultery, shall not marry the person with whom the said crime was committed, during the life of the former wife or husband; but nothing herein contained shall be construed to extend to or affect or render illegitimate any children born of the body of the wife during coverture."

There can be no doubt that she is entitled to an annulment on the ground that her marriage to the corespondent was void if she establishes all that is required by the Act of 1815, supra: Maurer v. Maurer, 163 Pa. Superior Ct. 264.

The record establishes that Joseph L. Affronti obtained a decree in divorce from Beatrice M. Affronti, the within plaintiff, in this court as of 4 June term, 1948, on September 13, 1948, and the decree contained a prohibition against marriage between Beatrice M. Affronti and Edward T. Grygo, the corespondent. If Joseph L. Affronti was living on April 21, 1951, plaintiff would qualify for an annulment even though she is not an injured and innocent spouse: Grone v. Grone, 23 Lehigh 268; Maurer v. Maurer, supra. If, on the

other hand, Affronti was deceased she cannot avail herself of the Act of 1815 and the marriage, presumably valid under Maryland law, could not be declared void by this court. In Fitzpatrick v. Miller, 129 Pa. Superior Ct. 324, it was declared that the legislative intent in providing for annulments, 23 PS §12, supra, was that the marriage contract was void *at the time of the alleged marriage.*

The testimony fails to establish whether Joseph L. Affronti was living on April 21, 1951, a fact which was pleaded. It is necessary, therefore, to return this case to the master and examiner to take testimony upon this subject.

There is another matter which concerns us. This complaint was filed on January 8, 1957, and a copy thereof served personally upon defendant on January 26, 1957. On February 7, 1957, before the adoption of LCR 1121,* a member of this bar entered his appearance for the defendant.

The case was dormant until August 9, 1963, when the learned master and examiner caused notice of master's hearing to be forwarded to 1509 N. Ocean Avenue, Seaside Park, New Jersey and the signature of "Edward Grygo" appears on the return receipt. This record contains no evidence that the signature is genuine; a fact which, in most instances, can be proved by plaintiff. Since the case must be returned for another hearing this matter should be inquired into by the master and examiner in the event that the same method of service is pursued for the rehearing.

We note also that service of the notice of filing re-

---

* "The appearance of the attorney for the defendant shall be accompanied by a letter of attorney executed by the defendant authorizing the entry of appearance and if the attorney is to accept service of pleadings and notices, a specific authorization to do so." (Effective January 2, 1961.)

port by the master and examiner was accepted by the same counsel who entered his appearance on February 7, 1957. If plaintiff further pursues this case it will be necessary for counsel for defendant to secure a letter of attorney as required by LCR 1121 if it is proposed that he accept service of the required notices.

In conclusion we observe that the law does not favor annulment of marriages, and it has long been a settled judicial policy to annul marriages only under such circumstances and for causes clearly warranting such relief. We have elaborated upon this principle in Jones v. Jones, 28 Lehigh 225.

### Order

Now, October 14, 1963, the within action for annulment of marriage is returned to the master and examiner for the purposes set forth in the within opinion.