Viola M. STARACE, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare of the United States of America, Defendant.

Civ. A. No. 63–639.

United States District Court
W. D. Pennsylvania.

Sept. 17, 1964.

Gustave Diamond, U. S. Atty., Pittsburgh, Pa., for defendant.

Johnston & Coho, Pittsburgh, Pa., for plaintiff.

DUMBAULD, District Judge.

Congress has seen fit to vest in the district court of the plaintiff's residence the power to review final decisions of the Secretary of Health, Education and Welfare under the Social Security system. 42 U.S.C. § 405(g). The Secretary's findings of fact, supported by substantial evidence, are conclusive. In the case at bar there is no controversy as to the facts, but the issue is a question of law, as to which the parties are entitled to this Court's independent judgment on the record made before the administrative agency. Social Security Bd. v. Nierotko, 327 U.S. 358, 368–369, 66 S.Ct. 637, 90 L.Ed. 718 (1946).

Under 42 U.S.C. § 402(g) (1) Congress provided that "The widow * * * of an individual who died a fully or currently insured individual * * * if such widow * * * has not remarried * * * shall be entitled to a mother's insurance benefit for each month * * * [until] she remarries * * * *"

The question here is whether the widow was "remarried" during the period of ten months that benefits were withheld by the agency's action.

The facts of the case are clear: the widow, a resident of Pennsylvania, on September 15, 1960, at Winchester, Virginia, went through a ceremony of marriage to one Hamilton, a resident of Connecticut, and so notified the agency on October 18, 1960, which shut off her benefits beginning with September 1960.

Hamilton went back to Connecticut. Later the widow joined him there but found he was an alcoholic. At no time did she receive any support from him.

In fact she spent about $6,000 of her own money by reason of the relationship with him.

On March 22, 1961, she brought suit for annulment in the Court of Common Pleas of Allegheny County, Pennsylvania, at No. 3377 April Term 1961. On May 26, 1961, the case was heard by Judge Henry X. O'Brien, now a Justice of the Supreme Court of that Commonwealth. On August 16, 1961, Judge O'Brien entered a decree declaring "that the alleged marriage * * * was and is wholly and absolutely null and void to all intents and purposes whatsoever."

Subsequently the agency resumed payment of benefits beginning with the month of August, 1961. The widow contends that payment should have been made *nunc pro tunc*, and that she is entitled to benefits for the period that she was "married" to Hamilton. We agree.

Congress could have regulated the matter specifically, and defined "remarriage" for the purposes of administration of the Social Security system. It did not, apparently considering that justice to beneficiaries was more important than convenience in administering the act without retroactive burdens on the fund. This meant that State law determines the marital status of beneficiaries.[1] DeSylva v. Ballentine, 351 U.S. 570, 580, 76 S.Ct. 974, 100 L.Ed. 1415 (1956). See also 147 A.L.R. 598.

Validity of this marriage is conceded to be governed by the law of the Commonwealth of Virginia. Jewett v. Jewett, 196 Pa.Super. 305, 306, 175 A.2d 141 (1961). If it was absolutely void by that law, and not merely voidable, the Pennsylvania court had power to grant the annulment. The law of that Commonwealth provides that:

"In all cases where a supposed or alleged marriage shall have been

---

1. It might be argued that "remarries" means going through a factual ceremony, rather than contracting a legally valid marriage. But no court has so held, and the Government does not contend for such an interpretation. It is conceded that "remarries" means to enter into a legally valid marriage. What constitutes such a marriage then becomes a question of State law.

contracted, which is absolutely void by reason of one of the parties thereto having a spouse living at the time of the supposed or alleged marriage, or, if, for any other lawful reason, the said supposed or alleged marriage was absolutely void when contracted, such supposed or alleged marriage, may, upon the application of either party, be declared null and void, in accord with the principles and forms hereinafter prescribed for cases of divorce from the bond of matrimony." (23 P.S. § 12).[2]

It is an elementary and fundamental distinction between annulment and divorce that an annulment decree does not speak from its date, it merely declares that the marriage was void *ab initio* from the very beginning. It does not create a new status; it affirms that there has been no change in status. "Such decree is no more than a declaratory judgment, judicially determining with certainty and finality that there never was a valid marriage." Com. ex rel Knode v. Knode, 149 Pa.Super. 563, 567, 27 A.2d 536, 538 (1942); Faivre v. Faivre, 182 Pa.Super. 365, 369, 128 A.2d 139 (1956).[3]

That under Virginia law a marriage induced by fraud such as is alleged here would be void (not merely voidable) is contended by plaintiff to be established by the Virginia decision of Pretlow v. Pretlow, 177 Va. 524, 14 S.E.2d 381 (1941).

We need not independently investigate to determine whether or not this is so, for Judge O'Brien has so decided, and his decision is the law of the case for the parties involved. Whether or not he made a mistake as to the Virginia law, his judgment is equally conclusive. And federal courts, as well as State courts, must give full faith and credit to the judgments of co-ordinate tribunals of competent jurisdiction. Dumbauld, The Constitution of the United States (1964) 388, 398, and cases there cited.

It is true, as the Government contends, that the Pennsylvania judgment does not bind the Government as a party or privy, under the rule of *res judicata*. But it does bind the Government by incorporation by reference to State law. DeSylva v. Ballentine, supra.

If plaintiff, instead of an annulment under Virginia law, had obtained a divorce under Pennsylvania law, the Government, not being a party or privy to the proceeding would not have been bound by the decree in that case either, but it would (and justifiably) have relied on the decree as a basis for granting future (but not retroactive) benefits. When the decree, by its terms and the intrinsic nature of annulment as distinguished from divorce, does have retroactive effect, the Government, under the reference to State law, must take the plaintiff's marital status as it finds it under the authoritative determination duly made by the Pennsylvania court.

Accordingly, we reverse the decision of the Secretary and find for the plaintiff in the amount of $893.00.

## JUDGMENT

And now, this 17th day of September, 1964, upon consideration of plaintiff's and defendant's motions for summary judgment, after argument,

It is ordered that defendant's said motion be and the same hereby is denied;

And it is further ordered that plaintiff's said motion be and the same hereby is granted;

And it is further ordered that the final decision of the Secretary of Health, Education and Welfare dated January

---

2. If this marriage had been contracted in Pennsylvania, annulment could not have been granted for fraud. Jewett v. Jewett, 196 Pa.Super. 305, 307, 175 A.2d 141 (1961).

3. The annulment decree is wholly declaratory, it does not work a change in legal relations. The annulment proceeding is one of the class known in German procedural doctrine as a *Feststellungsklage*, not a *Rechtsgestaltungsklage*.

24, 1962, that the plaintiff-claimant Viola M. Starace is not entitled to receive mother's insurance benefits under Section 202(g) (1) of the Social Security Act, as amended, for any month after the date of her remarriage through the date of her annulment decree, i. e., from September 1960 through July 1961, be and the same hereby is reversed; and judgment is hereby entered for plaintiff Viola M. Starace and against defendant Anthony J. Celebrezze, Secretary of Health, Education and Welfare of the United States of America, for the amount of said benefits from September 1960 through July 1961, to wit in the sum of $893.00.